**ABLE SUPPLY COMPANY, et al., Relator,**

v.

**The Honorable B.D. MOYE, Judge, Respondent.**

No. 95–0048.

Supreme Court of Texas.

Argued March 22, 1995.

Decided May 11, 1995.

Rehearing Overruled June 8, 1995.

Jim E. Cowles, Joe Michael Russell, Robert M. Martin, Jr., P. Michael Jung, Dallas, Jeff Shaver, Tyler, Lawrence P. Maxwell, Jr., Dallas, Jerry C. Parker, Tyler, Hubert A. Crouch, III, Mark K. Sales, Dallas, L. Hayes Fuller, III, Waco, Annalee Mathis, Houston, Howard Waldrop, Texarkana, Richard F. Jacobs, Austin, C. Victor Haley, Center, R. Lyn Stevens, Beaumont, John C. Hardy, Tyler, Thomas B. Taylor, Houston, for relator.

Jeffrey J. Angelovich, Nelson J. Roach, Harold W. Nix, Daingerfield, Walter Umphrey, Beaumont, Franklin Jones, Jr., Marshall, for respondent.

Justice OWEN, delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice GONZALEZ, Justice HIGHTOWER, Justice HECHT, Justice CORNYN, Justice GAMMAGE and Justice ENOCH join.

In this mass products liability suit involving over 3,000 plaintiffs and nearly 300 defendants, sixty-three of the defendants request mandamus relief from the trial court's refusal to compel an answer to an interrogatory filed nearly eight years ago which requests the identification of physicians who have attributed any plaintiff's alleged injury to a specific product manufactured or supplied by

a defendant. Under the facts of this case, we hold that the trial court's refusal to compel plaintiffs to answer this interrogatory constituted a clear abuse of discretion and left the defendants without an adequate remedy at law. We therefore conditionally grant a writ of mandamus directing the trial court to vacate its order denying the defendants' motion to compel and to enter an order granting such motion.

## I.

These proceedings commenced nearly eight years ago in June of 1987. Initially, 35 separate personal injury cases were filed. The trial court then ordered all subsequent cases filed under one docket number and consolidated for pretrial purposes. Defendants have filed motions for severance on which the trial court has not yet ruled. No trial date has been set.

The plaintiffs were employed at the Lone Star Steel plant in Morris County, Texas, at various times from 1947 to the present. Some of the plaintiffs were employed for as little as a few weeks as long as thirty years ago; others were employed at Lone Star for the majority of their working years. All plaintiffs allege they were exposed to toxic materials delivered to the Lone Star mill and that they suffer from various occupational diseases or require medical monitoring as a result of that exposure. The defendants include some 294 manufacturers and suppliers who have delivered a wide variety of products to the steel mill over a forty-year period.

In 1987, defendants directed one master set of interrogatories to plaintiffs. Question 30 of these interrogatories asks:

*Interrogatory NO. 30:* Please state the name and address of each and every doctor, physician or other medical practitioner who has attributed your alleged injury made the basis of this lawsuit to exposure to the defendants' products, including the dates of treatment or examination of each such doctor, physician or other medical practitioner, and the name or identity of the product to which your alleged injury is attributed.

In accordance with the trial court's case management order, thirty plaintiffs each month are required to respond to this interrogatory. Approximately 800 of the more than 3,000 plaintiffs had filed answers at the time this proceeding was filed in this Court. At this pace, interrogatory answers will be completed in another seven to eight years. Thus far, virtually all of the plaintiffs responding to this interrogatory have stated:

The answer to this interrogatory has not been determined at this time, but will be supplemented at a later date.

Approximately 12 of the 800 plaintiffs who have responded to this interrogatory have provided the name of a doctor. However, even these 12 plaintiffs have failed to provide any information regarding the products that caused their alleged injuries. None of the plaintiffs has objected to this interrogatory and none contends that the information requested is beyond the scope of discovery.

In their first attempt to obtain a meaningful answer to question 30, the defendants filed a motion to compel a supplemental answer on December 22, 1991, which was denied by the trial court. Nearly two years later, the defendants filed the motion that is the subject of this proceeding. Pursuant to Texas Rules of Civil Procedure 166b(6)(c) and 215(1)(b), defendants sought to compel supplemental or non-evasive answers from the plaintiffs who have answered interrogatory 30. After the trial court denied this motion on November 21, 1993, the defendants requested mandamus relief from the Texarkana court of appeals, which overruled the request on April 22, 1994; thereafter, this Court overruled the defendants' motion for leave to file petition for writ of mandamus without prejudice on December 1, 1994. *Able Supply Co. v. Moye,* 38 Tex.Sup.Ct.J. 102 (Dec. 1, 1994). The defendants refiled their request for relief in this Court, which granted leave to file. 38 Tex.Sup.Ct.J. 263 (Feb. 18, 1995).

## II.

Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). We first turn to the question of whether the trial

court has committed a clear abuse of discretion in denying the defendants' motion to compel an answer to interrogatory 30.

Defendants' position is simple: they contend that some eight years after this litigation was filed, they are entitled to know which plaintiffs are claiming that they have been injured by which defendant's product. The plaintiffs have sued literally hundreds of different suppliers to the Lone Star Steel plant, who make or supply a range of products from water softeners to paper clips to chemical solvents. The products at issue in this lawsuit were used in different areas and at different times in the plant, which covers several acres. The plaintiffs allege that all defendants, regardless of their particular product, exposed each of them "to their various toxic and hazardous poisons, particulates, gases, chemicals, vapors, fumes, defective products, defective equipment, defective machinery," thereby causing them injury. However, eight years after the lawsuit was filed, defendants are without any discovery that connects their alleged exposures to any defendant's product.

In their motion to compel, defendants presented the trial court with undisputed evidence that plaintiffs' counsel has had the opportunity to attempt to supply the basic causal information requested in interrogatory 30, but has deliberately chosen not to do so. In order to effectuate settlement with the asbestos-manufacturing defendants, plaintiffs' counsel had each plaintiff examined by the occupational medicine section at the University of Texas Health Science Center at Tyler, Texas. After a consultation with plaintiffs' lead counsel, the doctors in the occupational medicine section were instructed not to perform a broad range of tests, but instead to "look primarily at the chest and respiratory system because of the likelihood of asbestos exposure." The record contains undisputed evidence that the Center possessed the capability of examining the plaintiffs for other industrial diseases.

Defendants assert that the reason that the plaintiffs have been recalcitrant in providing a causal connection between the plaintiffs' alleged injuries and the defendants' products is that, in at least some cases, no causal connection exists. The facts are compelling. Wrongful death actions have been brought by several plaintiffs whose decedents were killed in automobile collisions or by other traumatic events as long as thirty years ago. In affidavits filed in response to motions for summary judgments, family members of at least two of the deceased men stated under oath that the family realized on or about June 15, 1988, that their decedent's health problems and resulting death were caused by the defendants' products. These affidavits were filed despite the fact that the former Lone Star employees perished in automobile collisions in 1965 and 1981, respectively. A total of 624 virtually identical affidavits were filed by family members of 194 other decedents, nearly all of which contain June 15, 1988, as the date on which each plaintiff realized the alleged connection between the death of his or her loved one and the defendants' products. The suit includes at least 80 plaintiffs who worked at Lone Star for less than one year. One plaintiff is 94 years old and has not worked at Lone Star in over 28 years, yet defendants have allegedly decreased his life expectancy. The great majority of plaintiffs are elderly men.

The defendants presented the trial court with concrete evidence that this lawsuit in all probability includes employees who had worked at Lone Star but had no belief that they had been or might be injured by any of the defendants' products. Sam Fowler, the lead plaintiff in the case, testified in his deposition that he decided to join the litigation because he

heard that they were getting a suit up about stuff that we had breathed out here at the plant and I figured I had been out there 37 years and I breathed about everything everybody else breathed and so I wanted to get in on the party.

When asked in that deposition to what he attributes any lung problems he has, Fowler's answer underscored the need for an answer to interrogatory 30 when he stated, "I don't know. I'm not a doctor."

Under the case management order imposed by the trial court, ten plaintiffs are deposed each week during the second half of every month. The record demonstrates that

many of the deposed plaintiffs have stated that no medical practitioner has ever told them that the injuries of which they complain are due to exposure to defendants' products. If no doctor has determined that a plaintiff has been injured by a particular substance manufactured by these defendants, plaintiffs are obligated to disclose this information in response to interrogatory 30.

In urging this Court to deny mandamus, plaintiffs argue that the trial court has broad discretion to manage its own docket, and that answers to interrogatory 30 require such a complex expert determination of causation that the trial court has acted well within that discretion in determining that no answers are required at the present time.

The plaintiffs first argue that defendants themselves have so hindered and delayed the discovery process that they have been unable to respond to interrogatory 30. Defendants, they allege, have halted or delayed completion of the "Litidex project," a massive undertaking which involves the computer imaging and abstraction of data from over 14,000,-000 invoices from product suppliers to the Lone Star plant over a forty-year period. However, even assuming that the defendants did delay this project and that the information from the invoices is necessary for a doctor to establish the causes of plaintiffs' injuries, plaintiffs concede in their brief that the project was completed in September of 1994.

Plaintiffs contend that it is only now that they have the Litidex information that they have been able to propound interrogatory requests to the defendants, the answers to which are necessary for plaintiffs to respond fully to interrogatory 30. The plaintiffs' interrogatories concern "the chemical constituents of products, prior claims for occupational disease, [and] Defendants' knowledge of hazards of the products." Plaintiffs have offered no explanation as to why information from the invoices was required before these interrogatories could be crafted. Further, information relating to *other* claims against these defendants by *other* plaintiffs or the *defendants'* own knowledge of their products cannot supply the information required by interrogatory 30, which asks for any *individ-*

*ual* medical determination of injury to a *specific plaintiff in this suit* from a specific product.

The plaintiffs also argue that some of the defendants have failed to supply a product identification notebook as required by the court's case management order, and that this failure has prevented them from answering interrogatory 30. However, this assertion does not provide a basis for the trial court to deny the defendants' motion to compel. First, the trial court's case management order does not tie the defendants' obligation to produce a product notebook to plaintiffs' obligation to answer the master set of interrogatories. Moreover, plaintiffs' contentions that a product identification notebook is necessary for a medical determination of injury by a product are insupportable. As early as July 15, 1988, plaintiffs had knowledge of at least 150 chemical substances allegedly present in the products supplied by the defendants. This list of chemical substances was attached to their second amended petition. Finally, the plaintiffs are in possession of abstracted information of products supplied to the Lone Star Steel plant from 1945 forward, as well as the dates of each plaintiff's employment. If this information is actually necessary for a medical doctor to determine that a plaintiff suffers from a particular occupational injury from a particular product, the plaintiffs have it.

None of the plaintiffs' assertions of delay provides any basis for the trial court to deny the defendants' motion to compel answers to interrogatory 30.

The plaintiffs also argue that the trial court did not abuse its discretion in denying defendants' motion to compel because significant progress in discovery has been made. They point out that they are in the process of "providing medical authorizations to Defendants" and that each answered set of master interrogatories provides defendants with information on that plaintiff's illness and the doctors who have treated him. While this may be true, it is not a substitute for discovery on the issue of causation. Each defendant is entitled to discover whether there has been a medical determination that an illness has been caused by that defendant's product.

■ The plaintiffs also argue that the trial court could not have abused its discretion because interrogatory 30 is a request to identify expert witnesses and under Texas Rule of Civil Procedure 166b(6)(b), they are not required to identify their experts until thirty days before trial. However, Rule 166b(6)(b) deals only with a party's duty to *designate testifying experts not previously disclosed.* TEX.R.CIV.P. 166b(6)(b). It addresses a party's duty to supplement an answer to an interrogatory requesting the identity of *testifying experts and the substance of their testimony* and does not control the situation here.[1] *Id.*

Interrogatory 30 does not ask the plaintiffs to identify which of their experts will testify at trial.[2] Rather, defendants seek factual information that is fundamental to the defense of these cases. Defendants properly moved to compel an answer to interrogatory 30 under the two relevant rules, 166b(6)(c) and 215(1)(b) and (c), which provide parties with a procedural mechanism for compelling an answer to an interrogatory. Rule 166b(6)(c) provides that a duty to supplement discovery answers may be imposed "by order of the court." TEX.R.CIV.P. 166b(6)(c). Rule 215(1)(b)(3)(b) provides that a party may move for an order compelling an answer when a party fails to answer an interrogatory. TEX.R.CIV.P. 215(1)(b)(3)(b). Rule 215(1)(c) states that for purposes of Rule 215, an evasive or incomplete answer is to be treated as a failure to answer. TEX.R.CIV.P. 215(1)(c). In their motion to the trial court to compel answers to interrogatory 30, the defendants argued that the responses they had received thus far were evasive and incomplete within the meaning of 215(1)(c), and the undisputed evidence in this case demonstrates the truth of this assertion.

Under these facts, the trial court properly could reach only one conclusion. Requiring the plaintiffs to answer an interrogatory linking each plaintiff's injuries with a particular product will simplify the case, streamline costs to both plaintiffs and defendants, conserve judicial resources, and aid the trial court in preparing a plan for the trial of these cases. We hold, therefore, that the trial court's denial of the defendants' motion to compel constituted a clear abuse of discretion.

### III.

■ Mandamus will not issue where there is a clear and adequate remedy at law, such as an appeal. *Walker v. Packer,* 827 S.W.2d at 840–42. An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ. *Id.* In *Walker,* this Court noted at least three situations exist in the discovery context where a remedy by an appeal may be inadequate. *Id.* at 843. One of these situations occurs when a trial court's discovery order imposes a burden on the producing party far out of proportion to any benefit to the requesting party. *Id.* While the discovery dispute at issue here is not an order requiring the defendants to produce "patently irrelevant or duplicative documents," the harm resulting from it is indistinguishable from the type of harm this Court noted will justify mandamus. *Id.* The defendants have been parties to this suit for eight years without access to the basic facts underpinning the claims against them. Defense costs have mounted to millions of dollars over the past two years alone. The refusal of the plaintiffs to provide a medical link between a particular plaintiff and a particular product at this point in time puts every defendant in the position of having to defend every case until all are tried, which constitutes a monumental waste of judicial resources. The burden imposed by requiring

---

1. Rule 166b(6)(b) states:
   If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial expect on leave of court.

2. Interrogatory 31 of the defendants' master set of interrogatories to the plaintiffs asks the plaintiffs to identify their testifying experts, and is not the subject of this mandamus proceeding.

294 defendants to continue to defend the claims of over 3,000 plaintiffs while awaiting a thirty-day window prior to trials that have yet to be scheduled before discovering which defendants are implicated is far out of proportion to any benefit to the plaintiffs in withholding this basic information.

■ This Court also noted in *Walker v. Packer* that a denial of discovery going to the heart of a party's case may render an appellate remedy inadequate. *Id.* The discovery denied by the trial court goes to the very heart of the defendants' case. While plaintiffs argue that the trial court has merely abated discovery, in reality, defendants are prevented from developing essential elements of their defense—injury and lack of causation. Indeed, under the plaintiffs' interpretation of the Texas Rules of Civil Procedure, they never have to assert a causal connection between a particular defendant's product and a particular plaintiff until 30 days before trial of that plaintiff's case. In a suit of this massive nature, which includes disparate exposures to a multitude of products, requiring defendants to wait until 30 days before trial to obtain crucial and probative evidence of a causal connection between their products and plaintiffs' injuries is such a denial of their rights as to go to the heart of the case.

Plaintiffs assert that defendants are not held hostage in this lawsuit pending plaintiffs' answer to interrogatory 30 because the plaintiffs have repeatedly offered to release defendants who provide them with satisfactory evidence of their nonliability. This offer is no substitute for meaningful discovery. In the first place, it unacceptably places plaintiffs in the position of the sole fact finder and judge of the defendants' evidence. In the second place, it misconstrues plaintiffs' obligations under the Texas Rules of Civil Procedure. Plaintiffs have an affirmative obligation under Rule 13 to sign pleadings that to the best of plaintiffs' knowledge, information and belief, formed after reasonable inquiry, assert claims that are not groundless and brought in bad faith or groundless and brought for purpose of harassment. TEX. R.CIV.P. 13. Plaintiffs *also* have an obligation to comply with the rules requiring them to answer interrogatories and engage in other discovery. Finally, the offer of voluntary dismissal of "non-liable defendants" is little solace to the defendants who have already participated in eight years of discovery, who are not dismissed by the plaintiffs, and who face continued proceedings with little prospect of a prompt resolution on the merits.

■ In *Walker v. Packer*, we noted that mandamus will issue where a party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error. The rights and interests of the parties in this case, both plaintiffs and defendants, are being advanced at an almost imperceptible pace, if at all. We have noted that the majority of the plaintiffs are elderly men. Some have died during the pendency of this matter. The failure of the trial court to require timely discovery has deprived them of their day in court and the opportunity to recover any compensation that might be due them within their lifetimes. Moreover, the defendants have been deprived of the opportunity to confront these claimants with the answers to interrogatory 30 in hand. The ability to defend claims effectively may be forever foreclosed.

The trial court's management of this case raises other disturbing questions. This Court is acutely concerned that no party's interest is being served by the manner in which the case has proceeded. To date, some defendants have settled. However, in at least some of the settlements, allocations of the proceeds do not appear to have been made on an individual basis. For example, in the settlement made by Brown & Root and H.B. Zachry Company, each plaintiff received sixty percent of $3,000, which is $1,800. Plaintiffs' counsel has received $2,400,000. There seems to have been no effort in these settlements to compensate individual plaintiffs commensurate with their respective injuries or with the merits of their case. The family of the decedent who was killed in an automobile accident over 26 years ago received the same amount as plaintiffs afflicted with mesothelioma.

■ Both the plaintiffs and the defendants are entitled to full, fair discovery within a reasonable period of time, and to have their cases decided on the merits. This Court will not tolerate the abuses that have occurred in the management of this case. We conditionally grant a writ ordering the trial court to vacate its order of November 19, 1993, and directing it to enter an order granting defendants' motion to compel of February 25, 1993, under which plaintiffs are to supplement their answers to interrogatory 30 within sixty days. Mandamus will issue only if the court fails to comply.

SPECTOR, J., joins in the judgment.