NUMBER 13-99-646-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________



IN RE: VAN WATERS & ROGERS, INC., ET AL.


___________________________________________________________________


On Petition for Writ of Mandamus.


____________________________________________________________________


OPINION ON MOTION FOR REHEARING



Before Justices Dorsey, Chavez, and Rodriguez


Opinion by Justice Rodriguez



 We grant in part plaintiffs'/real party in interests' motion for
rehearing. We withdraw our opinion of July 13, 2000, and substitute
this opinion in its place, requiring the trial court to determine the date
by which plaintiffs must supplement interrogatory Number 3
propounded by Allied Chemical Corporation. In all other respects, the
motion for rehearing is denied. 

 In this toxic tort suit involving over four hundred plaintiffs and
more than fifty defendants, relators, who constitute more than twenty
of the defendants, seek mandamus relief from several pretrial orders in
which the 370th Judicial District Court of Hidalgo County, Texas: (1)
allowed the plaintiffs to select twenty plaintiffs to appear first in trial, (2)
abated discovery as to all plaintiffs except the initial twenty designated
for trial, (3) allowed discovery as to an additional twenty-five plaintiffs,
and (4) ostensibly refused to compel plaintiffs to supplement their
answers to an interrogatory relating to causation of plaintiffs' injuries.(1) 
We deny the petition for writ of mandamus in part and conditionally
grant the petition in part. 

 Over four hundred individuals who were employed at the Parker-Hannifin Corporation's processing plant in McAllen, Texas, brought suit
in 1994 against numerous defendants alleging personal injuries from
exposure to various chemicals manufactured, marketed, sold and/or
distributed by the defendants. The plaintiffs claim to have suffered
injuries from a combination of chemicals used to manufacture O-Rings
at the plant. 

 As part of discovery, several defendants propounded
interrogatories on all plaintiffs. Most plaintiffs answered the
interrogatories, and, considering the answers inadequate, the
defendants filed a motion to compel. The trial court granted the motion
to compel on May 10, 1996 and ordered the plaintiffs to respond more
fully to the discovery by July 1, 1996. Prior to this deadline, plaintiffs
and defendants entered into a Rule 11 agreement that provided a
schedule for all supplemental responses. 

 After supplementation by some plaintiffs, the defendants again
filed a motion to compel on February 3, 1997, asserting the plaintiffs'
responses were inadequate. Among the interrogatories at issue was
Interrogatory 3 propounded by Allied Chemical Corporation relating to
the medical conditions of plaintiffs and the names of the physicians
who attributed their conditions to any of the defendants' products. The
trial court held a hearing on the motion on July 27, 1997, but the
hearing was adjourned without a ruling. 

 In October of 1997, the plaintiffs filed a motion to select trial
plaintiffs, and the defendants objected to the motion on the basis that
it was premature in light of plaintiffs' failure to respond to discovery
requests and refusal to be present for depositions. Defendants also
objected to the motion on the ground that the plaintiffs would control
the selection process without objective standards from the court or
input from the defendants. 

 On November 20, 1997, the court heard defendants' motion to
compel along with the plaintiff's motion to select trial plaintiffs. The
court granted the motion to select trial plaintiffs and signed an order on
November 20, 1997, permitting selection of twenty plaintiffs who
would go to trial before the remaining plaintiffs. The court abated
discovery as to the remaining plaintiffs. However, the order permitted
discovery from any plaintiff designated by the plaintiffs as a person with
knowledge. It also permitted discovery of any plaintiff if the defendants
could show a particularized need. However, the court refused to rule
on the defendants' motion to compel or on the sufficiency of the
plaintiffs' answers.

 Subsequently, after the defendants sought discovery from third
parties as to all plaintiffs, the plaintiffs moved for sanctions, to quash,
and for a protective order on the ground that the discovery was sought
in contravention of the trial court's order abating discovery as to all
plaintiffs save the designated twenty trial plaintiffs. On December 23,
1997, the court signed an order denying the motion for sanctions but
granting the motion to quash and protective order, stating, "As
previously ordered by the Court on November 20, 1997, Defendants are
ORDERED to cease all discovery from, regarding or pertaining to
Plaintiffs, including deposition by written questions and by
authorization forms from third parties, except as to the selected twenty
Plaintiffs, pursuant to the terms of the Court's Order of November 20,
1997."

 Defendants filed a petition for writ of mandamus in this Court,
seeking relief from, inter alia, the aforementioned pretrial orders. We
denied the petition. Defendants pursued mandamus relief with the
Texas Supreme Court, which denied the petition on October 15, 1998
"without prejudice to [defendants] again requesting relief from the court
of appeals and this Court after the trial court has had an opportunity to
reconsider its rulings." In re Van Waters & Rogers, Inc., 988 S.W.2d
741, 741 (Tex. 1998). The supreme court directed the trial court to
reconsider its rulings in light of its intervening decision in In re Colonial
Pipeline Co., 968 S.W.2d 938 (Tex. 1998), in which it conditionally
granted a writ of mandamus after a trial court abated discovery as to
over three thousand plaintiffs in order to resolve the claims of ten
designated trial plaintiffs. 

 On October 23, 1998, defendants filed a motion for the trial court
to reconsider its previous rulings in light of the supreme court's opinion. 
The plaintiffs filed a motion to re-designate trial plaintiffs on April 12,
1999, asking the court to replace the twenty designated trial plaintiffs
with twenty-five different plaintiffs.(2) The court held a hearing on May
11, 1999 on the motion for reconsideration and the motion to re-designate trial plaintiffs. During the hearing, the court verbally ordered
all of the plaintiffs to answer the interrogatory in accordance with the
supreme court's opinion in Able Supply.(3) However, the court then
informed the plaintiffs that they could provide the same answer that
they had previously provided with an explanation as to why they could
not be more specific. The court did not require the plaintiffs to do so by
a specific date. The court did not rule on the plaintiff's request to re-designate trial plaintiffs, but ordered discovery permitted as to the
twenty-five newly designated trial plaintiffs, in addition to the original
twenty trial plaintiffs. Discovery continued abated as to the remaining
plaintiffs. The court denied the motion for reconsideration in a written
opinion on November 4, 1999, over one year after the defendants filed
the motion. 

 In this proceeding, the defendants ask this Court to grant their
petition for writ of mandamus and order the trial court to vacate the
November 20, 1997 and December 23, 1997 orders concerning
discovery and the designation of trial plaintiffs. In addition, the
defendants ask this Court to order each plaintiff to respond adequately
to Interrogatory Number 3 propounded by Allied Chemical Corporation,
which relates to causation of plaintiffs' injuries, no less than ninety days
after the date of this Court's order. 

 "Mandamus will lie only to correct a trial court's clear abuse of
discretion when no adequate remedy by appeal exists." In re Alford
Chevrolet-Geo, et al., 997 S.W.2d 173, 176 (Tex. 1999) (citation
omitted). A trial court abuses its discretion when it acts in an arbitrary
or unreasonable manner or when it acts without reference to guiding
rules and principles. See Colonial Pipeline, 968 S.W.2d at 941 (citation
omitted). Relators contend the court abused its discretion by abating
discovery for all but forty-four plaintiffs. 

 Because the supreme court directed the trial court to reconsider its
abatement order in light of Colonial Pipeline Co., 968 S.W.2d 938 (Tex.
1998), we will examine the trial court's orders looking to that opinion. 
In Colonial Pipeline, 3,275 plaintiffs sued the owners of four pipelines
that ruptured and spilled various substances into flood waters along the
San Jacinto River. See id. at 940. Each pipeline was owned by a
different defendant and contained a different substance. See id. In
response to discovery requests from the defendants, the plaintiffs failed
to provide any information or documents. See id. at 940-41. 
Approximately two years after the litigation commenced, and without
discovery responses from the plaintiffs, the trial court ordered that
plaintiffs were not required to answer or supplement discovery
previously propounded by the defendants. See id. The court ordered
that the defendants could only conduct discovery on a group of ten
initial trial plaintiffs. See id. at 941. Thus, the defendants were
precluded from obtaining discovery from 3,265 plaintiffs. See id. 

 In an original mandamus proceeding, the supreme court found the
trial court abused its discretion and conditionally granted the writ of
mandamus. See id. at 940. The court noted that three and a half years
had passed since the plaintiffs filed suit, and that years could pass
before any discovery on the vast majority of plaintiffs would be
available. See id. at 941. Such a delay in discovery could result in
faded memories and lost or corrupted evidence. See id. More
importantly, because the plaintiffs had not provided the defendants with
the most basic medical information including descriptions of their
alleged injuries, names of treating physicians, or the names of
substances that caused the injuries, "each defendant [was] put in the
position of preparing to defend itself against claims that [might] not
involve the substance that was contained in its pipeline." Id. at 942.

 In the present case, although the defendants have not had
unfettered discovery, they have received some basic medical
information from virtually all plaintiffs.(4) Prior to the abatement order,
and in response to defendants' interrogatories, the plaintiffs provided
a list of medical health providers whom they had visited. When asked
to describe their medical conditions, the plaintiffs referred to their initial
disclosures filed in federal court. These disclosures provide the
defendants with the positions individual plaintiffs held at the plant, the
duration of their employment, and general health problems that
occurred while they were employed at the plant. Plaintiffs also
attributed their medical conditions to a list of sixty-four chemicals used
at the plant in their answers to interrogatories. The plaintiffs provided
authorizations for the defendants to obtain, inter alia, medical records.(5) 
Finally, the plaintiffs supplied the defendants with expert reports. 

 In addition to the defendants' discovery of basic medical
information as to virtually all plaintiffs prior to the abatement order, the
trial court in this case, unlike the court in Colonial Pipeline, provided
some avenues for the defendants to pursue additional discovery on non-trial plaintiffs after entry of the order. First, the court permitted
defendants to depose any person plaintiffs listed as a person with
knowledge of relevant facts in supplemental responses. Moreover, the
defendants were allowed to depose any plaintiff not listed as a person
with knowledge of relevant facts so long as they could show "a
particularized need."(6) Thus, discovery of all plaintiffs, though limited,
was not foreclosed. 

 We do not believe the supreme court in Colonial Pipeline intended
to prohibit trial courts from selecting small groups of trial plaintiffs to
serve as test cases while abating discovery as to the remaining plaintiffs
in order to manage mass tort cases. Indeed, the supreme court has
previously recognized the importance of allowing trial courts to manage
their own dockets in such a manner. See Polaris Inv. Management
Corp. v. Abascal, 892 S.W.2d 860, 861 (Tex. 1995) (granting
mandamus in such situations "would severely impair the ability of trial
judges to manage their dockets, and would require this Court to
micromanage trials"). On more than one occasion, the trial court in this
case observed that it was necessary for purposes of time and space to
allow an initial group of plaintiffs to go to trial first and to abate
discovery as to the remainder. 

 Considering the need to manage mass tort litigation, the basic
discovery provided to the defendants, and the trial court's providing
defendants with a means of attaining discovery from non-trial plaintiffs,
we conclude the court did not abuse its discretion by allowing selection
of a small group of plaintiffs and abating additional discovery as to all
but the forty-four trial plaintiffs. 

 Defendants additionally contend that the trial court abused its
discretion by allowing plaintiffs' counsel unilaterally to select twenty
plaintiffs to appear as the first plaintiffs at trial. In fact, the court
allowed the defendants to challenge the selected trial plaintiffs by
showing that the plaintiffs "should not be tried together, and that a
smaller set of Plaintiffs should be tried together." We conclude the trial
court did not abuse its discretion in allowing the plaintiffs to select, and
the defendants to challenge, the initial trial plaintiffs. 

 Defendants further complain the trial court abused its discretion
in failing to compel all plaintiffs to supplement their response to
Interrogatory Number 3 propounded by Allied Chemical Corporation. 
We agree. 

 The contested interrogatory and response stated:

 INTERROGATORY NO. 3:


 Please state the name and address of each and
every doctor, physician or other medical
practitioner who has attributed your alleged injury
made the basis of this lawsuit to exposure to the
defendants' products, including the dates of
treatment or examination of each such doctor,
physician or other medical practitioner, and the
name or identify [sic] of the product to which
your alleged injury is attributed. 


 SUPPLEMENTAL RESPONSE:


 Plaintiff . . . does not recall the names of any of
the medical health care providers attributing the
injuries to exposure to Defendants' chemicals nor
the dates of treatment. Plaintiff will later
supplement if Plaintiff later recalls this
information. To the best of Plaintiff's recollection,
Plaintiff did not [ask] a medical health care
provider if the chemicals at the Parker-Hannifin
Corporation plant caused the medical conditions. 
Plaintiff['s] . . . medical conditions are currently
attributed to the chemicals used at the Parker-Hannifin Corporation plant in McAllen, Texas,
including those listed in EXHIBIT "A" in
Interrogatory No. 2A of Plaintiff Elias Acevedo's
First Supplemental Answers to Allied Chemical
Corporation's First Set of Interrogatories. In
addition, it is Plaintiff's understanding that there
are experts that have or will attribute Plaintiff's
injuries to the chemicals. Their names will be
provided to Defendants in accordance with the
Docket Control order and/or the Texas Rules of
Civil Procedure. Plaintiff, however, has seen the
medical health providers listed in Interrogatory
No. 2(D) above. 


 As the defendants observe, this is the same interrogatory at issue
in Able Supply Co. v. Moye, 898 S.W.2d 766, 768 (Tex. 1995). In that
case, the supreme court held that a trial court abused its discretion in
denying the defendants' motion to compel a supplemental answer to
the response, "The answer to this interrogatory has not been
determined at this time, but will be supplemented at a later date." Id. 
Because the case had been on file for several years and many of the
defendants had not discovered whether their products were responsible
for any of the plaintiffs' injuries, the court found this response
inadequate, and held that "[e]ach defendant is entitled to discover
whether there has been a medical determination that an illness has
been caused by that defendant's product." Id. at 770. The defendants
in this case contend that the plaintiffs' responses are inadequate
because they neither provided the names of any physicians who
attributed their injuries to the defendants' chemicals, nor denied that a
physician had, in fact, made such a determination.

 A party must respond to written discovery with a complete
response, based on all the information reasonably available to the party
or its attorney at the time the response is made. See Tex. R. Civ. P.
193.1. The sufficiency of answers to any given set of interrogatories
must be decided on a case by case basis. See De Prins v. Van Damme,
953 S.W.2d 7, 18 (Tex. App.--Tyler 1997, writ. denied); Jamail v.
Anchor Mortg. Services, Inc., 797 S.W.2d 369, 374 (Tex. App.--Austin
1990), writ denied per curiam, 809 S.W.2d 221 (Tex. 1991). Few
general rules exist regarding the sufficiency of answers to
interrogatories due to the unique nature of interrogatories and the
answers. See Jamail, 797 S.W.2d at 374. 

 In the present case, the defendants asked for the name and
address of each and every doctor, physician, or medical practitioner
who attributed their injury to exposure to the defendants' products. 
Apparently, all plaintiffs who responded answered that they did not
recall the names of any such physicians or medical practitioners, and
that, to the best of their knowledge, they did not ask a medical health
care provider if the chemicals at the plant caused their medical
condition. In accordance with Able Supply, we conclude that the
uniform response by all plaintiffs that they did not recall the names of
any physicians who had linked their injuries to the defendants'
chemicals and that they did not ask a medical health care provider if the
chemicals at the plant caused their medical condition is insufficient and
must be supplemented to answer whether a medical determination has
been made that an illness was caused by the defendants' products. 

 Plaintiffs argue that the defendants are asking them to answer
questions which they cannot answer; that is, they are asking them to
remember facts which they are unable to remember, or make up an
answer. However, if no physician or medical practitioner has diagnosed
a plaintiff as having an injury caused by a specific product, then the
plaintiff must respond accordingly. 

 Plaintiffs further contend they have provided this information
through medical authorizations and other discovery. In Able Supply,
the plaintiffs noted that they were "in the process of 'providing medical
authorizations to Defendants' and that each answered set of master
interrogatories provide[d] defendants with information on that plaintiff's
illness and the doctors who have treated him." Able Supply, 898
S.W.2d at 770. In response to this argument, the court expressed that
such information "is not a substitute for discovery on the issue of
causation." Id. Likewise, the medical authorizations, lists of doctors
who have treated the plaintiffs, and the injuries described in the
plaintiffs' initial disclosures do not provide the defendants with
discovery on the issue of causation. Neither do the expert reports
provided by the plaintiffs linking some of the products at the plant to
various injuries constitute a response to the interrogatory, as none of
the reports explain whether a physician has made a medical
determination that an illness was caused by a defendant's product.

 Plaintiffs additionally contend that they are unable to provide an
answer naming a physician who has linked an injury to a specific
chemical of the defendants because the plaintiffs' theory of liability is
that a combination of chemicals, rather than a single chemical, caused
their injuries. Accordingly, no doctor would have attributed their
injuries to a single chemical. As plaintiffs note, their expert reports
detail their "toxic soup" theory of liability. The defendants respond that
plaintiffs must prove that specific chemicals are defective to attribute
liability to any defendant. We do not take this occasion to comment on
the viability of such a claim, and we would be inclined to agree that
such an issue would be better resolved on summary judgment. 
Regardless of whether plaintiffs are entitled to rely on such a theory,
however, they must answer whether there has been a medical
determination attributing their injuries to the defendants' chemicals. If
no physician has made such a determination, regardless of plaintiffs'
theory of liability, they should answer accordingly.

 The supreme court in both Able Supply and Colonial Pipeline has
made clear that "[e]ach defendant is entitled to discover whether there
has been a medical determination that an illness has been caused by
that defendant's product." Colonial Pipeline, 968 S.W.2d at 942
(quoting Able Supply, 898 S.W.2d at 770). Because the plaintiffs'
supplemental response, as it stands, fails to answer whether there has
been such a determination, we find that the trial court clearly abused its
discretion in failing to compel all plaintiffs to supplement the answer by
a date certain. 

 We additionally conclude defendants are without an adequate
remedy at law. The suit has been on file for more than six years,
without the defendants having knowledge of whether there has been
a medical determination linking the plaintiffs' injuries to the defendants'
products. The "denial of discovery going to the heart of a party's case
may render an appellate remedy inadequate." Able Supply, 898 S.W.2d
at 772. Whether the defendants' products caused the plaintiffs' injuries
goes to the heart of the litigation. See id. Therefore, we conditionally
grant the petition for writ of mandamus(7) and order the trial court to
compel all plaintiffs to supplement their response to interrogatory
Number 3 propounded by Allied Chemical Corporation by a date to be
determined by the trial court.(8) Except for this supplementation by all
plaintiffs, discovery shall remain abated to the non-trial plaintiffs.

 Finally, defendants assert the cumulative effect of the trial court's
orders constitutes an abuse of discretion. We have concluded the trial
court did not abuse its discretion in designating a small group of trial
plaintiffs and abating discovery, notwithstanding supplementation of
interrogatory Number 3, as to the non-trial plaintiffs, and we have
conditionally granted the writ of mandamus with respect to the
plaintiffs' response to interrogatory Number 3. Therefore, any error has
been remedied. 

 We conditionally grant the petition for writ of mandamus and
order the trial court to enter an order granting defendant's motion to
compel of February 3, 1997, under which all plaintiffs are to supplement
their answers to interrogatory Number 3 propounded by Allied Chemical
Corporation by a date certain. However, the writ will 

not issue unless the trial court fails to comply with this opinion. We
deny the petition for writ of mandamus as it relates to all other requests
for relief. 

 NELDA V. RODRIGUEZ

 Justice



Publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this the 26th day of October, 2000.

 

 

1. The defendants also seek relief from the trial court's failure to rule
on their motion for reconsideration filed in October of 1998. This
complaint is moot, as the court overruled the motion on November 4,
1999. See James v. City of Round Rock, 630 S.W.2d 466, 468 (Tex.
App.--Austin 1982, no writ) (a complaint becomes moot when it does
not rest, or ceases to rest, on existing facts).
2. One plaintiff, Rosaura Rodriguez, was originally designated as one
of the twenty trial plaintiffs, and was also named as one of the twenty-five redesignated trial plaintiffs. As such, the trial court abated to
discovery as to all but forty-four plaintiffs 
3. Able Supply Co. v. Moye, 898 S.W.2d 766, 768 (Tex. 1995)
4. We note that the record does not contain the response of every
plaintiff to defendants' interrogatories. The record does, however,
include the interrogatory responses of Elias Acevedo and Antonio
Cordova; and the defendants characterize the plaintiffs' responses as
"uniformly" inadequate. The defendants note that all plaintiffs identified
the same chemicals in their supplemental interrogatory answers. 
Furthermore, the record does contain the initial disclosures of every
plaintiff listing a description of each plaintiff's injuries. 
5. We are cognizant of the language in Able Supply indicating that
medical records are "not a substitute for discovery on the issue of
causation." Able Supply, 898 S.W.2d at 770. In this case, however,
the medical authorizations comprise only a portion of the discovery
obtained by the defendants. 
6. Defendants complain that the requirement that they show a
particularized need for discovery from non-trial plaintiffs improperly
shifted the burden to the party seeking discovery to show why it is
necessary. Moreover, they assert such a requirement on the party
seeking discovery will result in loss of attorney work product privilege
because they will be required to reveal why they seek discovery from
particular individuals. While the court's requirement arguably shifts the
burden to the defendants, we do not consider it an abuse of discretion. 
As the trial court acted within its discretion in ordering discovery abated
as to all plaintiffs save the designated trial plaintiffs, it further acted
within its discretion by providing the defendants with a vehicle for
attaining discovery on non-trial plaintiffs notwithstanding the
abatement order.
7. Plaintiffs contend defendants are not entitled to mandamus relief
because they come before this Court with unclean hands. Specifically,
plaintiffs maintain that defendants intentionally delayed litigation by,
inter alia, frivolously removing the case to federal court, objecting to
discovery, and refusing to identify experts and produce expert reports. 
Plaintiffs have failed to include any record references in support of their
assertion that defendants refused to identify experts and produce expert
reports. Moreover, plaintiffs have failed to make a showing that any of
these actions were frivolous or intended to delay the litigation. We
refuse to deny defendants equitable relief based on the bald allegations
of plaintiffs. In short, we conclude plaintiffs unclean hands argument
is entirely devoid of merit. 
8. We note that defendants have asked that we order the trial court
to require plaintiffs to supplement their responses no less than ninety
days after the date of this Court's order. We believe the trial court is in
a better position to schedule a deadline for this discovery, and that the
more pragmatic approach is to leave the precise date to the discretion
of the trial court.