**Opinion issued August 6, 2013.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-12-01012-CV**

————————————

**IN RE WALTER KIDDE PORTABLE EQUIPMENT, INC., Relator**

---

**Original Proceeding on Petition for Writ of Mandamus**
**Trial Court Case No. 64729**

---

**MEMORANDUM OPINION**

In this original proceeding, Walter Kidde Portable Equipment, Inc., challenges orders in which the trial court limited discovery of records of child protective services investigations, and disallowed the deposition of a government witness. Kidde, a manufacturer of home smoke alarms, is a defendant in a products liability suit arising out of a tragic fire in which three children died, and

others sustained injury. Before the fire occurred, the Brazoria County branch of the Texas Department of Family and Protective Services (TDFPS) had investigated allegations of parental abuse and neglect involving the children, and it conducted a further investigation in its aftermath.

TDFPS produced some records associated with its investigations, but redacted others, on the basis that the redacted materials were protected from discovery by statute. *See* TEX. FAM. CODE ANN. § 261.201 (West Supp. 2012). It also moved to quash the deposition of its investigator. Kidde seeks mandamus relief from two discovery rulings upholding TDFPS's position. In the first, the trial court quashed Kidde's notice to depose Eric Holmes, the TDFPS investigator who interviewed the plaintiffs on the morning of the fire. In the second, the trial court denied Kidde's request for disclosure of the additional, redacted information from the TDFPS records, which TDFPS has withheld from discovery. We grant relief in part and deny it in part.[1]

---

[1] The underlying case is *Brandon Moore, Connie Moore, & Jacquelyn Homes, and Daniel and Dana Novak, Individually and as Joint Representatives of the Estates of Kaitlyn Novak (Deceased), Christian Novak, and Nathaniel Novak and as Next Friend of Nicholas Novak (a minor), Robert Kennedy and Alan Andrew Cummings, Intervenors v. Bell Partners, Inc., Gabriella Mendoza and Marissa Montalva, G&I VI Skylar Point, L.P. d/b/a Skylar Point Apartments, and Walter Kidde Portable Equipment, Inc., Defendants*, No. 64729; from the 23rd District Court of Brazoria County, Texas, the Honorable Ben Hardin presiding.

2

## Background

The underlying claims for wrongful death, personal injury, and deceptive trade practices arise out of a two-story apartment fire that occurred in November 2010. The fire caused the death of three children then living at the apartment with their mother. One child survived the fire. Their parents, Dana and Daniel Novak, individually and as representatives of their children's estates and their surviving child—sued Kidde, among other defendants. The suit also names, as intervening plaintiffs, Robert Kennedy and Alan Cummings, who also resided in the apartment when the fire occurred. In addition to the other claims, Daniel brings a loss of consortium claim arising from his children's deaths. Dana Novak later nonsuited her claims against Kidde.

The plaintiffs allege that the Kidde smoke alarms failed to timely sound in response to the fire due to a defect in their design. Specifically, the plaintiffs allege that the smoke alarm installed on the first floor of the apartment sounded only after thick smoke caused the occupants to awaken, and that the second floor alarm, if it sounded at all, did not sound soon enough to allow the upstairs occupants to escape the apartment. According to the pleadings, the Kidde alarms use an ionization system to trigger the alarm. The plaintiffs' expert, relying on the

apartment occupants' deposition testimony to conclude that the alarm sounded untimely, opines that if photoelectric smoke alarms or combination of ionization/photoelectric smoke alarms had been installed in the same location, then those types of alarms would have sounded earlier in response to the fire, and would have permitted all of the apartment's occupants to escape without serious harm.

Initially, Daniel Novak requested that TDFPS produce its records. In response, TDFPS provided Daniel's counsel with a redacted copy of its investigation records. Caseworker Eric Holmes, the TDFPS investigator assigned to the file, also executed a deposition on written questions, confirming that the records were public business records as defined under Texas Rule of Evidence 803. Plaintiffs' counsel produced the 74 pages of redacted records, accompanied by the business record affidavit, to Kidde in response to Kidde's discovery requests.

The final investigation, conducted by Holmes over the few days following the fire, concerned the circumstances surrounding the fire and its origins. The produced records contain Holmes's notes from his interviews with the apartment occupants and with Daniel. Kidde contends that some deposition testimony in this case arguably is not consistent with some information contained in the records that TDFPS produced. It points out, for example:

4

| Witness | TDFPS records | Deposition testimony |
|---|---|---|
| Andrew Cummings | Said that he passed the surviving child going downstairs while he was going up to help others.<br><br>Stated "Robert Kennedy heard the fire alarm going off downstairs; it woke him up."<br><br>Robert Kennedy arrived and cut short the interview. | Said that the surviving child came downstairs sometime before fire started.<br><br>Testified that "at some point after we had already been awake, the smoke detector downstairs had finally gone off, after we were already awake."<br><br>Denied speaking with Holmes; does not recall speaking with anyone from TDFPS |
| Daniel Novak | Reported to Holmes that "the downstairs [of the apartment] is fine, but the upstairs is rough" and that Dana had kept six large propane tanks there. | Denied telling Holmes that the apartment's second floor was "rough"; says that apartment was "fair" or "normal for a kid's room," and denied that Dana had kept propane tanks there. |

The plaintiffs designated Dr. Don B. Russell as their expert on the performance of the Kidde smoke alarms installed in the apartment. Russell opines that the smoke alarms would have sounded timely if they had given the apartment's occupants "two or three minutes of escape time and time to react," but his review of the facts indicates that the alarms did not. Russell bases his opinion on the occupants' deposition testimony that they did not hear either of the smoke

detectors before smoke had filled the apartment. *Id.* In particular, he concludes that the downstairs alarm did not sound in a timely manner.

Dana and Daniel had separated before the fire occurred, so Daniel did not reside at the apartment. The incidents before the fire addressed in the TDFPS records concern Daniel's interactions with his children and reports of physical abuse. Dana's divorce pleadings also contain allegations of mistreatment and a request to terminate Daniel's parental rights. In the divorce proceeding, Daniel agreed to a temporary restraining order that governed his contact with Dana, but in his deposition, Daniel denied the allegations in Dana's affidavit supporting her motion for the TRO. Daniel's testimony about the conditions at Dana's apartment conflict with Holmes's post-fire interview notes of his interview with Daniel. In denying that he made the statements that Holmes recorded, Daniel attacked Holmes's motivation and veracity, remarking that "I think this Eric Holmes guy was pretty much trying to dig something that he didn't have. . . . I can't recall saying the stuff that he's writing down there."

Kidde sought to depose Holmes to verify the events recorded in his notes, establish his experience and expertise as a TDFPS investigator, and discover additional facts relating to the investigations recorded in TDFPS files. TDFPS

tendered unredacted versions of the records to the trial court for its consideration in support of its motion to quash further discovery of them.

## Discussion

### I.    Standard for Mandamus Review

Mandamus will issue to correct a discovery order if the order constitutes a clear abuse of discretion, and there is no adequate remedy by appeal. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998); *see also In re Maurer*, 15 S.W.3d 256, 259 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding).

The rules of civil procedure define the general scope of discovery as any relevant, unprivileged information—even if inadmissible at trial—that "appears reasonably calculated to lead to the discovery of admissible evidence." *See* TEX. R. CIV. P. 192.3(a); *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003). To determine whether the trial court abused its discretion in denying discovery, we review the entire record, mindful that "the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." *Colonial Pipeline*, 968 S.W.2d at 941. Erroneous denial of relevant discovery going to the heart of a party's case compromises a party's ability to present a viable claim or defense at trial, rendering the appellate remedy inadequate. *Able v. Moyé*, 898 S.W.2d 766, 772 (Tex. 1995); *see Walker v.*

7

*Packer*, 827 S.W.2d 833, 843 (Tex. 1992) ("[A]n appeal will not be an adequate remedy where the party's ability to present a viable claim or defense at trial is vitiated or severely compromised by the trial court's discovery error.").

## II.     Confidentiality of TDFPS Records

Section 261.201 of the Texas Family Code declares that the following information is confidential and not subject to public release:

1) a report of alleged or suspected abuse or neglect made under this chapter and the identity of the person making the report; and

2) except as otherwise provided in this section, the files, reports, records, communications, audiotapes, videotapes, and working papers used or developed in an investigation under this chapter or in providing services as a result of an investigation.

TEX. FAM. CODE ANN. § 261.201(a).   Subsection (b) of 261.201 contains an exception to nondisclosure.  *In re Fulgium*, 150 S.W.3d 252, 253 (Tex. App.—Texarkana 2004, orig. proceeding).  A trial court may, in its discretion, order disclosure of the information made confidential by the statute if:

after hearing and an in camera review of the requested information, the court determines that the disclosure of the requested information is: (A) essential to the administration of justice; and (B) not likely to endanger the life or safety of: (i) a child who is the subject of the report of alleged or suspected abuse or neglect; (ii) a person who makes a report of alleged or suspected abuse or neglect; or (iii) any other person who participates in an investigation of reported abuse or neglect or who provides care for the child.

TEX. FAM. CODE. ANN. § 261.201(b).  The parties dispute whether the trial court acted within its discretion in denying Kidde's motion for their disclosure under the exception in subsection (b).

Relatively few appellate cases have involved the interpretation of subsection (b).  In one case, the Texarkana Court of Appeals concluded that the disclosure of confidential information pursuant to section 261.201(b) was "essential to the administration of justice" in a medical malpractice case, in which the information was relevant to whether an infant's brain damage was caused solely by the hospital's alleged negligence or in part by the failure to obtain proper pre-natal and post-natal care for the infant, which the TDFPS records documented. *In re Agers*, No. 06-10-00020-CV, 2010 WL 1780133, at *3 (Tex. App.—Texarkana May 5, 2010, orig. proceeding).

In another case, analyzing the necessity for disclosure of confidential information under a comparable exception for adult protective services (APS) records, the El Paso Court of Appeals granted mandamus relief and ordered disclosure of the records, after determining that they were relevant to the issues in a will contest in which the decedent's only daughter had, for the most part, been cut out of her father's will.  *In re Chesses*, 388 S.W.3d 330, 340 (Tex. App.—El Paso May 2012, orig. proceeding) (addressing claim for disclosure under TEX.

HUM. RES. CODE ANN. § 48.101(c)).  The daughter testified that an APS specialist had informed her that her father had complained that his attorney was pressuring him to leave the bulk of his estate to certain charities before his death, that her investigation had uncovered suspicious behavior by the attorney, and that the father had told the specialist that he really wanted his daughter to get everything. *Id.* at 332.  The appellate court held that the APS documents and the specialist's deposition were essential to the administration of justice, and thus, the trial court had abused its discretion in denying the discovery.  *Id.* at 340, 343.

## III.  Analysis

Kidde seeks Holmes's deposition and the unredacted TDFPS records for two purposes: (1) to question Holmes about his post-fire investigation and interviews; and (2) to question him about the records concerning reports that Daniel abused his deceased children and investigations into those allegations. We consider each issue in turn.

### A.    Proposed discovery

#### 1.  Post-fire investigation

Novak, Kennedy, and Cummings base their DTPA and products liability claims against Kidde on allegations that "the design, manufacture, and marketing of the [Kidde] smoke alarms . . . w[ere] defective such that they failed to provide a

10

timely warning to the occupants of the apartment." They specifically allege that Kennedy "awoke to the strong smell of smoke," and that "[w]hen he awoke, no smoke detector was sounding." The plaintiffs claim that the alarms' failure to timely sound was a producing and proximate cause of their injuries and the children's death, because smoked had filled the apartment before the occupants discovered the fire and prevented their safe escape.

Under the TDFPS Policy Manual, the report of a child's death triggers a TDFPS investigation when "there is an indication that abuse or neglect may have caused the death; or . . . the cause of death is not yet determined or has not been clearly attributed to accidental or natural causes." TDFPS STATEWIDE INTAKE POLICY & PROC. § 4421 (Jan. 2011). Holmes's investigation records document his interviews with Daniel, Dana, and two more of the apartment's occupants concerning the circumstances that resulted in the children's deaths. Holmes's interviews directly involve the same persons and events under consideration in this suit. His investigation notes show that Holmes's testimony could be relevant to the question of when, if ever, either of the two smoke alarms sounded. Daniel's observations to Holmes about the apartment's condition at the time the fire occurred are relevant, because Kidde reasonably could present evidence that obstructions or highly flammable materials also contributed to the occupants'

11

inability to safely escape the fire. Barring Kidde from deposing Holmes about his post-fire interviews with the occupants deprives it from discovery that reasonably could lead to evidence undermining the credibility of plaintiffs' allegations that Kidde's alarm failed to properly function, or that an alarm malfunction contributed to the injuries and deaths that occurred. We hold that the information Kidde seeks through Holmes's deposition is essential to the administration of justice, because Kidde seeks information reasonably calculated to lead to the discovery of admissible evidence on issues directly involving the parties and events in dispute. *See Agers*, 2010 WL 1780133 at *3; *Chesses*, 388 S.W.3d at 340. Any fire-related investigation records, to the extent they have not already been produced in unredacted form, are similarly essential. *See id.* Specifically, pages 1 through 5 of case number XXXXXX12 can be produced with more selective redaction to provide investigative information to Kidde while still withholding sensitive identifying information.

### 2. Redacted materials from other TDFPS investigations

Kidde also seeks the complete unredacted TDFPS files from other TDFPS investigations for the purpose of countering Daniel's loss of consortium claim. A claim for loss of consortium aims to compensate individuals for the "positive benefits flowing from the love, comfort, companionship, and society that the

beneficiary would have experienced had the decedent lived." *Thomas v. Uzoka*, 290 S.W.3d 437, 455–56 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (citing *Moore v. Lillebo*, 722 S.W.2d 683, 687–88 (Tex. 1986)); *see Sanchez v. Schindler*, 651 S.W.2d 249, 251, 253 (Tex. 1983) (recognizing that parents may recover damages for loss of "love, advice, comfort, companionship and society" resulting from child's wrongful death). Kidde contends that discovery into allegations of abuse and neglect could lead to evidence relevant to a jury's determination of the amount Daniel should receive in damages for loss of his children's companionship and society. The investigative records that TDFPS already has produced yield this sort of information. A review of the tendered *in camera* records shows that the redactions contain additional information about the allegations that initiated the TDFPS investigations, but producing the records in their unredacted form would divulge the people who had made complaints to TDFPS, people to whom the statute particularly affords protection from disclosure.

The redactions to the records involving the investigations before the fire meet the statute's interest in maintaining the confidentiality of persons who report child abuse or neglect, and the intake information documented to have been conveyed by those persons. Dana's divorce pleadings and the affidavit supporting her motion for TRO state that Daniel mistreated the children and allege grounds for

13

termination of his parental rights. The trial court reasonably could have concluded that material relating to Daniel's relationship with his children is already available to Kidde from non-protected sources and in the records that the TDFPS has produced, without need for the redacted matters. In balancing the interests of the statute and the exception, and in light of the information that TDFPS produced to the parties, we hold that the trial court acted within its discretion in concluding that Kidde failed to show that production of the redactions to the records of TDFPS investigations conducted before the fire is essential to the administration of justice.

## B. Endangerment

With respect to the second prong of the disclosure inquiry, Kidde must demonstrate that disclosure of the confidential information it seeks would not be likely to endanger the life or safety of a child who is the subject of a report of suspected abuse or neglect, the person who makes a report, or any participant in the investigation of a report. TEX. FAM. CODE ANN. § 261.201(b). Kaitlyn and Christian, the children who were the subject of the reported abuse, are deceased. Daniel and Dana, who have lodged complaints of abuse and neglect against each other, downplayed those allegations in this suit. The parties have most of the TDFPS records, and the neither the plaintiffs nor the TDFPS contend that further

14

disclosure would endanger anyone's life or safety in this case. We hold that Kidde satisfied the second prong with respect to the discovery it seeks.

## Conclusion

We conditionally grant the writ of mandamus and direct the trial court to vacate its order quashing the deposition of Eric Holmes. We deny mandamus relief relating to Kidde's request for production of the TDFPS records in unredacted form, except with respect to the records that pertain to the fire investigation. The writ will issue only if the trial court fails to comply with this opinion.

Jane Bland
Justice

Panel consists of Justices Jennings, Bland, and Massengale.