

**NUMBERS 13-08-00206-CV**
**13-08-00678-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN RE: ALLIED CHEMICAL CORPORATION, ET AL.

### On Petition for Writ of Mandamus

## O P I N I O N

### Before Chief Justice Valdez and Justices Garza and Benavides
### Opinion by Justice Garza

In September 1999, hundreds of plaintiffs sued more than thirty defendants, seeking damages for a vast array of injuries allegedly caused by a "toxic soup" of pesticides released into the community from facilities in Mission, Texas, operated by Hayes-Sammons Chemical Co. ("Hayes-Sammons") between 1950 and 1967. Nine years after the suit was initiated, the claims of one plaintiff, Guadalupe Garza, have been severed and set for trial.

In a petition for writ of mandamus filed on April 16, 2008,[1] the defendants,[2] comprised mostly of manufacturers and suppliers of the chemicals used in the pesticide

---

[1] Appellate cause number 13-08-00206-CV.

[2] For ease of reference, the relators in the instant case will be referred to as "defendants," while the real parties in interest will be referred to as "plaintiffs."

facilities, ask us to order the trial court to grant their motions for summary judgment and their fourth motion to compel discovery. In a separate petition filed on November 25, 2008,[3] the defendants ask us to compel the trial court to vacate its orders severing Garza's claims and setting them for trial. We deny both petitions in part and conditionally grant the writs in part.

## I. BACKGROUND

Multiple petitions for writ of mandamus have been filed with this Court by the defendants in this case. In 2004, the defendants asked us to compel the trial court to vacate its order consolidating five plaintiffs' claims and setting them for trial, asserting that those plaintiffs had not timely provided adequate discovery responses. We denied the petition. *In re Allied Chem. Corp.*, No. 13-04-00491-CV, 2004 Tex. App. LEXIS 9931, at *1-2 (Tex. App.–Corpus Christi Nov. 4, 2004, orig. proceeding) (per curiam) (mem. op.). In a five-to-four decision, the Texas Supreme Court subsequently granted mandamus relief, noting that "in mass tort cases involving hundreds of parties and complicated causation questions, a trial judge could not postpone responses to basic discovery until shortly before trial." *In re Allied Chem. Corp.*, 227 S.W.3d 652, 655 (Tex. 2007) (orig. proceeding) (citing *Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex. 1995)); *but see id.* at 664 (Jefferson, J., dissenting) (noting that plaintiffs had already supplemented their discovery responses and mandamus was inappropriate because the case was moot). The plaintiffs have since repeatedly amended their discovery responses. Whereas the 2004 petition was concerned with the timeliness of plaintiffs' responses, we are now called upon to evaluate, among other things, the adequacy of those responses.

The defendants first served their master set of interrogatories on plaintiffs on November 12, 2001. The master set included the following Interrogatory 20, known as the *Able Supply* interrogatory:

Please state the name and address of each and every doctor, physician,

---

[3] Appellate cause number 13-08-00678-CV.

psychiatrist, psychologist, counselor, or other medical practitioner who has attributed your alleged injury made the basis of this lawsuit to exposure to the Defendants' products or Defendants' conduct, including the dates of treatment or examination of each such doctor, physician, or other medical practitioner, and the name or identity of the products to which your alleged injury is attributed.

*See Able Supply*, 898 S.W.2d at 768 (mandating trial court to compel mass tort plaintiffs to answer similar interrogatory).[4]

On June 25, 2002, the defendants filed their first motion to compel, seeking an order compelling the plaintiffs to answer Interrogatories 15 (asking plaintiffs to identify the product or products that caused their injuries), 16 (asking which defendants produced the products that caused their injuries), 17 (asking which facility was the source of the products that caused their injuries), and 20 (the *Able Supply* interrogatory).[5] The trial court granted this motion on October 29, 2002, ordering the plaintiffs "to provide full, complete, and plaintiff-specific answers to Interrogatories 15, 16, 17, and 20" on or before December 2, 2002.

On December 2, 2002, the plaintiffs supplemented their answers to the interrogatories. In response to Interrogatories 15 and 16, the plaintiffs provided a general list of products produced by each defendant. The response did not indicate which plaintiffs had been exposed to which products. In response to Interrogatory 17, the plaintiffs identified "the Hayes-Sammons faciliti(es) located in Mission, Texas" as the location from which the products causing their injuries originated.

In response to the *Able Supply* interrogatory, the plaintiffs stated that "none of their treating physicians have told them that their health condition(s) are or were attributable to their exposure" to defendants' products. The response to Interrogatory 20 also included an expert report authored by Sandra Mohr, M.D., stating that "most primary care physicians

---

[4] Plaintiffs' initial responses to the master set of interrogatories are not contained in the record before us.

[5] According to defendants, the plaintiffs had previously objected to Interrogatories 15, 16, 17 and 20 as "overly broad, harassing, unduly burdensome, seek[ing] information that is neither relevant nor likely [to] lead to the discovery of admissible evidence and ... constitute[] an impermissible fishing expedition."

3

are not prepared by virtue of their clinical training to assign a chemical etiology to the diagnosis of a disease and that Occupational and Environmental Medicine physicians are the most appropriate specialists to determine chemical etiology of a disease."

The defendants then filed a second motion to compel on April 26, 2004, again asking the trial court to compel "plaintiff-specific" answers to the *Able Supply* interrogatory. The trial court granted this second motion as well, ordering all plaintiffs to "supplement Interrogatory No. 20 (i.e., the *Able Supply* Interrogatory) . . . in accordance with the Court's October 29, 2002 Order." In response, the plaintiffs filed supplemental *Able Supply* answers on July 19, 2004, which consisted of a three-page affidavit authored by Michael Wolfson, M.D., a physician trained in occupational and environmental medicine. Dr. Wolfson's affidavit was accompanied by a 1,848-page chart entitled "Exhibit A," which listed each individual plaintiff's symptoms and the pesticides produced at the Hayes-Sammons plant which could have caused those symptoms. The chart included references to academic literature which Dr. Wolfson claimed supported his assertions that the various chemicals could cause the various symptoms. An example of one plaintiff's entry on the chart is as follows:

| NAME | PLAINTIFF ID | SYMPTOM | PESTICIDES | SUPPORTIVE LITERATURE |
|------|--------------|---------|------------|-----------------------|
| Acevedo, Alfredo | 703010 | Coughing | 2,4,5-T<br>2,4-D<br>Chlordane<br>DDT/DDE/DDD<br>Dieldrin/Aldrin/Endrin<br>Lindane<br>Malathion<br>Paris Green<br>(Arsenic)<br>Phosdrin<br>Toxaphene | Alexandersson (1982)<br>Belomyttseva (1969)<br>Berwick (1970)<br>Davies (1983)<br>Ditraglia (1981)<br>Hayes (1982)<br>Holmes (1974)<br>Jenkins (1964)<br>McGee (1952)<br>Morton (1989)<br>Ramu (1973)<br>Rauch (1990)<br>Weiner (1961)<br>Zivot (1993) |

Dr. Wolfson noted in his affidavit that the chart provided only a general statement

about which pesticides could produce certain symptoms, and that it did not purport to make any specific statements about causation regarding any individual plaintiff. Specifically, Dr. Wolfson stated:

> Exhibit "A", attached to this affidavit, is a summary of my opinions. My opinions at this time are limited to the general causation of medical harm by pesticides (i.e. whether a pesticide is capable of causing a particular disease, condition or injury) and not specific causation (i.e. whether a pesticide, in fact, caused a plaintiff's disease, condition or injury).

Subsequently, on August 9, 2004, the trial court granted a motion filed several months earlier to consolidate five plaintiffs' claims and set them for trial. Trial was set for the five plaintiffs—Irma Gomez, Sandra Aguero, Noelia O. Morales, Garza, and Jose Maria Solis—for February 14, 2005.

Certain defendants then moved for no-evidence summary judgment on September 9, 2004, claiming that the plaintiffs had still not adequately answered the *Able Supply* interrogatory. Certain other defendants filed a third motion to compel with the trial court seeking to compel an adequate response. At a hearing on November 22, 2004, the trial court denied both motions.

On February 14, 2005, four of the five trial plaintiffs—Garza, Morales, Gomez and Solis—filed an additional supplemental response to Interrogatory 20, identifying nine experts that would testify on their behalf at trial: a hematologist/oncologist, two toxicologists, a civil engineer, an industrial hygienist, two environmental engineers, an epidemiologist, and a former DuPont research chemist.

On March 3, 2005, defendants Aventis CropScience USA ("Aventis") and Maxus Energy Corp. ("Maxus") filed no-evidence and traditional motions for summary judgment, contending that they never sold or delivered any of the pesticides at issue in the case to the Hayes-Sammons facility.

Subsequently, on June 15, 2007, the Texas Supreme Court granted mandamus relief to all defendants, directing the trial court "to vacate its order setting any of the plaintiffs' claims for trial until the defendants have a reasonable opportunity to prepare for

5

trial after learning who will connect their products to plaintiffs' injuries." *In re Allied Chem. Corp.*, 227 S.W.3d at 659. The Court found specifically that the defendants were entitled to adequate responses to the *Able Supply* interrogatory establishing the causation element of their claims. Moreover, the Court noted that mandamus was an appropriate remedy because: (1) making thirty defendants "prepare in the dark for 1,900 claims is far out of proportion to the benefit of giving the plaintiffs more time (after five years) to decide who or what injured them"; (2) allowing discovery to continue to thirty days before trial amounts to a "denial of discovery . . . go[ing] to the very heart of this case"; and (3) "the plaintiffs' intention to withhold responses until shortly before [trial] meant the defendants could not prepare a viable defense." *Id.* at 658 (citing *Able Supply*, 898 S.W.2d at 771, 772). In response, on July 17, 2007, the defendants filed a fourth motion to compel answers to the *Able Supply* interrogatory, asking the trial court to mandate "complete and plaintiff-specific responses," and to order that a failure to so respond by any plaintiff within 30 days "shall result in severance and dismissal with prejudice."

One week prior to its decision in *In re Allied Chemical Corp.*, the Texas Supreme Court handed down *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765 (Tex. 2007), which addressed the adequacy of causation evidence in an asbestos exposure case. The *Borg-Warner* court held that, in order to establish causation, the plaintiff must provide "[d]efendant-specific evidence relating to the approximate dose to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease." *Id.* at 773. In response to this decision, the defendants in the instant case propounded an additional interrogatory on plaintiffs on July 2, 2007, asking the following:

> For each Defendant listed in Plaintiffs' Thirteenth Amended Petition or any Defendant listed in a previous petition that has settled, please provide:
>
> a. The approximate dose of each product manufactured or sold by each Defendant to which Plaintiff was exposed that is alleged to have caused harm to Plaintiff;
>
> b. The methodology used to calculate the dose; and

6

c.      Evidence that the dose was a substantial factor in causing the harm to Plaintiff.

After over two months, having failed to receive an answer to this interrogatory—which the defendants style "the *Borg-Warner* interrogatory"—the defendants filed a motion to compel an answer with the trial court.

On September 11, 2007, Garza provided an amended *Able Supply* answer, including reports authored by the nine experts identified in the earlier response. In one report, Frank Gardner, M.D., a clinical professor of medicine, concluded after reviewing Garza's hospital and clinical records that: "[Garza] lived in the vicinity of the [Hayes-Sammons] facility, and had prolonged exposure to pesticides. The chronic exposure to high risk levels of organochlorine pesticides were the cause, with more probability than not, for [her] onset of non-Hodgkins lymphoma." In another report, William R. Sawyer, Ph.D., a toxicologist, calculated Garza's exposure doses of organochlorine pesticides and concluded:

> I am certain, to within a reasonable degree of toxicological certainty that Ms. Garza's chronic exposures to DDT, dieldrin, BHCs, and toxaphene released from Hayes-Sammons significantly contributed to the onset of her NHL [non-Hodgkin lymphoma]. My review of her historical medical records, direct interview, and inspection of her 1016 Nicholson Street home failed to provide any other significant occupational or environmental exposures contributing to the onset of her NHL.

On October 9, 2007, Garza provided an amended answer to the so-called *Borg-Warner* interrogatory. The response included detailed calculations of the amount of the chemicals to which Garza was exposed. The response included precise estimates as to Garza's exposure to each of the chemicals based on dermal absorption, inhalation, and ingestion of dust and soil, and concluded that Garza had been exposed to the following doses[6]:

---

[6] The response stipulated that the total dose levels were "[u]nderestimated value[s]" because of "unavailable inhalation data [and] oral fruit and vegetable ingestion [data]" and that "household dust dermal absorption" was not included in the figures.

| | |
|---|---|
| DDT | $2.2 \times 10^{-4}$ mg/kg/day |
| Dieldrin | $1.95 \times 10^{-4}$ mg/kg/day |
| BHC | $1.1 \times 10^{-2}$ mg/kg/day |
| Toxaphene | $2.0 \times 10^{-5}$ mg/kg/day |

Garza's October 9, 2007 supplemental response also contained a list identifying certain defendants which, she alleged, provided the specific pesticides that caused her injuries. The list, included as a supplemental response to defendants' Interrogatory 16, stated:

> Guadalupe Garza supplements this response and identifies the following manufacturers and/or distributors of the pesticides and the specific pesticides sold or otherwise distributed to Hayes-Sammons and which are the cause of her Non-Hodgkins' Lymphoma:

| COMPANY | CHEMICAL(S) |
|---|---|
| Allied Chemical Corporation | BHC, DDT |
| Aventis Cropscience USA Holdings, Inc. d/b/a Aventis Cropscience USA | BHC |
| Maxus Energy Corporation f/k/a Diamond Shamrock Corporation | DDT |
| [etc.] . . . | |

Accompanying Garza's amended responses was a motion to sever her claims and a request to set her claims for trial.

At a hearing on October 10, 2007, the trial court considered the motion for summary judgment filed by Aventis and Maxus, the defendants' fourth motion to compel an adequate *Able Supply* answer, the defendants' motion to compel *Borg-Warner* answers, as well as Garza's motion for severance and request for trial setting. At the hearing, the plaintiffs conceded that they are obligated to answer the *Borg-Warner* interrogatory, but merely argued that they ought to be given the opportunity to do so "on a rolling basis rather than all 1,800 at once." The defendants, on the other hand, argued that not only was Dr. Wolfson's affidavit and chart insufficient to adequately answer the *Able Supply*

8

interrogatory on behalf of the non-trial plaintiffs, but also that Garza's supplemental responses to the *Able Supply* and *Borg-Warner* interrogatories were inadequate because they are not "defendant-specific." After hearing argument, the court granted the plaintiffs' motion to sever Garza's claims on December 11, 2007, and took the motion for summary judgment and the two defendants' motions to compel under advisement.[7]

Subsequently, on October 18, 2007, Garza filed a second set of supplemental answers to the interrogatories, including a report by Marco Kaltofen, a professional engineer, which attempted to ascertain the source of the chemicals identified in the *Borg-Warner* response as causing Garza's injuries. Kaltofen's report referenced historical sales records, audit records, and deposition testimony, and concluded:

> In summary based on the manufacturing and distribution history of the defendants, the evidence of sales to Hayes Sammons and the testing results, it is my opinion that the following manufacturers supplied the identified products to the Hayes Sammons facility during the time period in question:
>
> Allied—DDT
>
> Syngenta, Zeneca AG, ICI Americas (all formerly doing business as Geigy)—DDT
>
> Maxus (formerly doing business as Diamond Alkali)—DDT
>
> Dupont—DDT
>
> Lebanon, as distributor for Montrose Chemical—DDT
>
> Montrose Chemical—DDT
>
> Pharmacia Corporation (formerly doing business as Monsanto)—DDT
>
> Velsicol—DDT
>
> Shell—Dieldrin
>
> PPG—BHC
>
> Hercules—Toxaphene

On September 12, 2008, the trial court denied the defendants' motions to compel

---

[7] Garza's case against 14 defendants was set for trial on October 20, 2008. On March 20, 2008, the trial setting was vacated at the plaintiffs' request. Trial on Garza's claims was later reset to June 15, 2009.

as to Garza and granted Garza's motion for trial setting. By a scheduling order entered on October 6, 2008, the court set Garza's claims for trial on June 15, 2009.

In their April 16, 2008 petition for writ of mandamus, the defendants challenge the trial court's October 10, 2007 ruling in trial court cause number C-4885-99-F denying their motions for summary judgment and their fourth motion to compel an adequate answer to the *Able-Supply* interrogatory.[8] The defendants also assert that the trial court abused its discretion by failing to rule on their motion to compel answers to the *Borg-Warner* interrogatory.

Defendants' November 25, 2008 petition, addressing Garza's severed claims in trial court cause number C-4885-99-F(10), asks that we compel the trial court to (1) vacate its December 11, 2007 order severing Garza's claims, (2) vacate its October 6, 2008 order denying defendants' motions to compel and setting Garza's claims for trial, and (3) grant defendant Aventis's no-evidence motion for summary judgment.

## II. STANDARD OF REVIEW

Mandamus will issue to correct a clear abuse of discretion for which the remedy by appeal is inadequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles. *See, e.g., Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Additionally, an abuse of discretion occurs when the trial court clearly fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

An appellate remedy is "adequate" when the benefits to mandamus review are outweighed by the detriments. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate. *Id.* Nevertheless, in this context, "'adequate' . . . has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential

---

[8] On February 6, 2008, defendant Maxus withdrew its motion for summary judgment.

10

considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." *Id.* Whether an appellate remedy is "adequate" so as to preclude mandamus review depends heavily on the circumstances presented and is better guided by general principles than by simple rules. *Id.* at 137.

### III. MOTIONS TO COMPEL

We first address the defendants' request that we order the trial court to grant their fourth motion to compel answers to the *Able Supply* interrogatory, filed on July 17, 2007, and their motion to compel answers to the so-called *Borg-Warner* interrogatory, filed on September 17, 2007.

### A. *Able Supply* Interrogatory

In *Able Supply*, the Texas Supreme Court clarified the burden which plaintiffs asserting immature mass-tort claims must meet at the discovery stage of litigation. 898 S.W.2d at 771. "Requiring the plaintiffs to answer an interrogatory linking each plaintiff's injuries with a particular product will simplify the case, streamline costs to both plaintiffs and defendants, conserve judicial resources, and aid the trial court in preparing a plan for the trial of these cases." *Id.* The defendants claim that the answers provided by both Garza and the non-trial plaintiffs are insufficient to satisfy this standard.

In 2007, we held that mass-tort plaintiffs' responses to *Able Supply* in a similar case were inadequate and that mandamus relief was appropriate to preclude the trial court from setting a plaintiff's case for trial in the absence of an adequate such response. *In re Van Waters & Rogers, Inc. (Van Waters III)*, No. 13-06-00153-CV, 2007 Tex. App. LEXIS 1883, at *13-18 (Tex. App.–Corpus Christi Mar. 6, 2007, orig. proceeding) (per curiam) (mem. op.). The plaintiffs in *Van Waters III* "either answered that (1) no health care provider has made the required connection between injury and exposure to the defendant's products, or (2) have answered that a named health care provider has attributed the possibility of injury to chemicals generally, without specifying a particular product or products." *Id.* at *17.

11

Here, Dr. Wolfson's report, unlike the plaintiffs' response in *Van Waters III*, does attribute the possibility of each plaintiffs' injury to specific chemicals. However, the report does not provide the defendant-specific causal link required under *Able Supply*. Dr. Wolfson's affidavit and chart comprise what is essentially a compendium of epidemiological studies linking the plaintiffs' symptoms with chemicals that could have caused them. Such studies cannot, by themselves, establish the actual cause of an individual's injury or condition. *Merrill-Dow Pharms. v. Havner*, 953 S.W.2d 706, 715 (Tex. 1997) ("epidemiological studies cannot establish the actual cause of an individual's injury or condition"). That is because "[e]vidence that a chemical *can* cause a disease is no evidence that it *probably* caused the plaintiff's disease." *In re Allied*, 227 S.W.3d at 656 (citing *Havner*, 953 S.W.2d at 714-21) (emphasis in original). Indeed, Dr. Wolfson expressly stipulates that his opinions "are limited to . . . whether a pesticide is *capable* of causing a particular disease, condition or injury . . . and not . . .whether a pesticide, *in fact*, caused a plaintiff's disease, condition or injury" (emphasis added). Additionally, the non-trial plaintiffs' responses do not link specific chemicals to specific defendants; this deprives the defendants of the ability to pinpoint which claims they may reasonably need to defend against and harms their ability to prepare a viable defense. *See id.* at 658.

A comparison with Garza's responses is instructive. In her first supplemental response, Garza provided the identities of medical experts who have attributed her alleged injuries to exposure to specific products: "Guadalupe Garza supplements this response to state that Dr. Frank Gardner and Dr. William Sawyer have attributed her exposure(s) to toxaphene, dieldrin, DDT and BHC to the Non-Hodgkin's Lymphoma." Moreover, in her second supplemental response, Garza provided the report by engineer Kaltofen establishing that the allegedly injury-causing chemicals were produced by specific defendants to the Hayes-Sammons plant during the time period in question.

The defendants claim that Garza has still not provided a sufficient *Able Supply* response because (1) the reports of Drs. Gardner and Sawyer do not link the allegedly

injury-causing chemicals with specific defendants, and (2) Kaltofen's report does not provide "a medical determination that an illness has been caused by [a particular] defendant's product." *See Able Supply*, 898 S.W.2d at 770. While it is true that the individual reports themselves may be insufficient, we conclude that when considering the reports together, Garza has provided an adequate response to the *Able Supply* interrogatory. That is because she has properly alleged the causal link between a specific product or products, produced by specific defendant or defendants, with her specific injuries. The reports of Drs. Gardner and Sawyer are sufficient to alert the defendants as to "whether there has been a medical determination that an illness has been caused by that defendant's product," *see id.*, and Kaltofen's report links each defendant to specific products provided to the Hayes-Sammons plant. The responses together give each defendant notice as to which of their chemicals, if any, are alleged to have caused Garza's injury; it thereby allows each defendant to be able to mount a defense and develop the merits of the case. The remaining non-trial plaintiffs must be held to this standard.

We conclude that the non-trial plaintiffs' responses to *Able Supply* are insufficient to establish causation, or to give the defendants an opportunity to prepare a viable defense. *See In re Allied Chem. Corp.*, 227 S.W.3d at 658. Accordingly, the trial court abused its discretion by failing to grant defendants' fourth motion to compel adequate *Able Supply* responses from the non-trial plaintiffs.

B. "*Borg-Warner* Interrogatory"

Defendants additionally claim that the trial court abused its discretion by failing to rule on their motion to compel answers to the so-called *Borg-Warner* interrogatory. The non-trial plaintiffs have not, as of yet, responded to the interrogatory; however, at the trial court's hearing on October 10, 2007, they conceded that they are required to do so.

The *Borg-Warner* court noted the following standard for expert opinions in an asbestos exposure case:

> An opinion on causation should be premised on three preliminary assessments. First, an expert should analyze whether the disease at issue

can be related to chemical exposure by a biologically plausible theory. Second, the expert should examine if the plaintiff was exposed to the chemical in a manner that can lead to absorption into the body. Third, the expert should offer an opinion as to whether the dose to which the plaintiff was exposed is sufficient to cause the disease.

232 S.W.3d at 771 (citing BERNARD D. GOLDSTEIN & MARY SUE HENIFIN, *Reference Guide on Toxicology*, in FEDERAL JUDICIAL CENTER, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 401, 403 (2d ed. 2000)).  The court further held that, in the context of asbestos litigation, "substantial-factor causation, which separates the speculative from the probable, need not be reduced to mathematical precision.  Defendant-specific evidence relating to the approximate dose to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease, will suffice." *Id.* at 773. Although the mass tort considered here is immature, unlike asbestos litigation, we believe that the same standard is applicable in this context.  The three "preliminary assessments," made defendant-specific and including a dosage approximation, would suffice to put the defendants on notice as to the claims against which they may reasonably need to defend, and would allow them to prepare a viable defense. *See In re Allied*, 227 S.W.3d at 658.

Dr. Wolfson's report, which was the most extensive interrogatory response provided by the non-trial plaintiffs, is not adequate for this purpose.  The report, with its attached references, provides the first "preliminary assessment" in that it establishes the scientific *possibility* that certain chemicals provided by certain specific defendants caused the injuries complained of by plaintiffs.  It does not, however, provide the remaining assessments because it did not set forth an opinion as to:  (1) whether it was possible for each individual plaintiff to have absorbed the chemicals in an amount sufficient to have caused the injury; or (2) whether the specific defendants' chemicals did, *in fact*, cause the plaintiffs' injuries.[9]  Accordingly, Dr. Wolfson's affidavit and chart do not constitute adequate answers to the *Borg-Warner* interrogatory.  The trial court therefore abused its

---

[9] The 1,848-page chart attached to Dr. Wolfson's affidavit similarly fails to adequately answer the *Borg-Warner* interrogatory, because (1) it does not purport to make allegations as to specific causation, and (2) it is not defendant-specific.

14

discretion in failing to grant defendants' motion to compel such answers from the non-trial plaintiffs.

However, Garza's *Borg-Warner* response provided detailed calculations as to the approximate doses of each chemical she was exposed to during the time period in question. Kaltofen's report, which relied on "historical pesticide soil data" to indicate the precise dosage of each chemical Garza was likely exposed to at her childhood home, concluded as follows:

> I am certain, to within a reasonable degree of toxicological certainty that Ms. Garza's chronic exposures to DDT, dieldrin, BHCs, and toxaphene released from Hayes-Sammons significantly contributed to the onset of her NHL. My review of her historical medical records, direct interview, and inspection of her 1016 Nicholson Street home failed to provide any other significant occupational or environmental exposures contributing to the onset of her NHL.

Defendants contend that this response is inadequate because it is not defendant-specific; we disagree. Kaltofen's report also contained a list, based on documentary evidence, identifying which specific manufacturers supplied the named chemicals to the Hayes-Sammons facility during the time period in question. Kaltofen concluded that defendants Allied, Syngenta, Zeneca AG, ICI Americas, Maxus, DuPont, Montrose Chemical, Pharmacia and Velsicol provided DDT; defendant Shell Chemical provided Dieldrin; defendant PPG Industries provided BHC; and defendant Hercules Inc. provided Toxaphene to the Hayes-Sammons plant during the time period in question. This conclusion, taken in combination with Garza's supplemental response providing dosage approximations for DDT, Dieldrin, BHC, and Toxaphene, provided the three defendant-specific "preliminary assessments" as required under *Borg-Warner*. *See* 232 S.W.3d at 771, 773. Accordingly, the trial court did not abuse its discretion in denying defendants' motion to compel a new *Borg-Warner* answer from Garza. Because Garza's *Able Supply* and *Borg-Warner* responses were adequate, the trial court did not abuse its discretion by

15

severing her claims and setting them for trial.[10]

The responses to the *Borg-Warner* interrogatory which will be provided by each of the non-trial plaintiffs must similarly be defendant-specific and show: (1) that the plaintiff's complained-of injuries can be related to chemical exposure by a biologically plausible theory; (2) that the plaintiff was exposed to the chemical in a manner that can lead to absorption into the body; and (3) that the dose to which the plaintiff was exposed is sufficient to cause the complained-of injury. *See id.*

### C. Adequate Appellate Remedy

Having held that the trial court abused its discretion in failing to require the non-trial plaintiffs to adequately answer the *Able Supply* and *Borg-Warner* interrogatories, we now must consider whether defendants have an adequate appellate remedy in order to determine whether they are entitled to mandamus relief. *See In re Prudential Ins. Co. of Am.,* 148 S.W.3d at 135-36.

A party does not have an adequate remedy by appeal when that party's ability to present a viable claim or defense is severely compromised or vitiated by the erroneous discovery ruling to the extent that it is effectively denied the ability to develop the merits of its case. *See Walker,* 827 S.W.2d at 843. Plaintiffs have proposed answering the *Able Supply* and *Borg-Warner* interrogatories on a rolling basis, in groups of ten every 45 days.

---

[10] Defendants claim that the supreme court's opinion in *In re Allied Chem. Corp,* 227 S.W.3d 652, 659 (Tex. 2007) (orig. proceeding), requires that *all* plaintiffs file adequate *Able Supply* responses prior to *any* plaintiff's claims being set for trial, pointing to Justice Brister's statement at the conclusion of the opinion that "we direct the trial court to vacate its order setting any of the plaintiffs' claims for trial until the defendants have a reasonable opportunity to prepare for trial after learning who will connect their products to plaintiffs' injuries." *Id.*

It is clear to this Court, however, that the statement merely means that each individual plaintiff's claims may not be set for trial until *that individual plaintiff* has provided sufficient information linking defendants' products to his or her injuries. The alternative interpretation advocated by defendants implies that the supreme court intended to foreclose trial against *any* plaintiff unless and until the defendants have a "reasonable opportunity to prepare for trial" against *all* of the hundreds of plaintiffs, a conclusion that we cannot countenance.

Moreover, we do not believe that the supreme court intended to abrogate or limit the trial court's discretion to sever a claim or to order a separate trial of any claim in furtherance of convenience. *See* TEX. R. CIV. P. 41 ("Any claim against a party may be severed and proceeded with separately."), 174(b) ("The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.").

At that rate, according to defendants, it would take over 23 years for the more than 1,800 remaining plaintiffs to answer. Defendants ask that we require the trial court to compel answers "immediately" and raise the specter that, without such an order, 23 years will elapse without an adequate response.

Although such a protracted period of litigation is certainly onerous to all parties, the nature of an immature mass tort is such that neat and expeditious conclusion to all litigation by all plaintiffs is next to impossible. Furthermore, it is not our province to impose a strict time-limited discovery mandate analogous to the statutory expert report requirements imposed upon medical malpractice claimants and asbestos or silica claimants. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.351(a), 90.006(a) (Vernon Supp. 2008). Defendants are simply not entitled to "immediate" responses to questions for which answers may take many years to develop.

Nevertheless, the trial court may not abate meaningful discovery with respect to any of the plaintiff's claims. *See In re Van Waters & Rogers, Inc.* (*Van Waters I*), 62 S.W.3d 197, 201 (Tex. 2001) (orig. proceeding). That is, plaintiffs are not absolved of the responsibility to timely provide adequate interrogatory responses merely because their ranks are numerous. We are concerned that the trial court has failed to set any temporal guidelines for the production of discovery, particularly in a case involving such a wide array of claims and claimants. Regardless of the procedural obstacles presented by a case involving thousands of parties, the defendants are entitled to full, fair discovery within a reasonable period of time. *See Able Supply*, 898 S.W.2d at 773.

We note that the rules of civil procedure require that "a party must make a complete response, based on all information reasonably available to the responding party or its attorney at the time the response is made." TEX. R. CIV. P. 193.1; *see In re Allied Chem. Co.*, 227 S.W.3d at 657. Thus, the plaintiffs are not at liberty to withhold any information from the defendants if such information is reasonably available. However, to the extent that the trial court's failure to set appropriate temporal guidelines for discovery in this

17

matter constitutes an abatement of discovery with respect to the non-trial plaintiffs, it is in contravention of the supreme court's rulings in *Van Waters I*, 62 S.W.3d at 201, and *In re Allied Chemical Co.*, 227 S.W.3d at 657. Such an abatement would deprive the defendants of an adequate appellate remedy because it would vitiate their ability to develop the merits of the case. *See Walker*, 827 S.W.2d at 843; *see also Van Waters III*, 2007 Tex. App. LEXIS 1883, at *15-16.

We therefore conditionally grant in part the writ requested in defendants' April 16, 2008 petition and order the trial court to require that all non-trial plaintiffs produce adequate answers to the *Able Supply* and *Borg-Warner* interrogatories within a reasonable time period as determined by the trial court.

## IV. MOTIONS FOR SUMMARY JUDGMENT

We next address defendants' request that we compel the trial court to grant their motions for summary judgment first filed on September 9, 2004.

### A. Non-Trial Plaintiffs

After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i).

Defendants, citing *In re Prudential*, 148 S.W.3d at 135-36, contend that they have no adequate appellate remedy available to them with respect to the trial court's denial of their summary judgment motions. However, the defendants do not direct us to any authority indicating that mandamus relief is appropriate to remedy, specifically, a trial court's denial of a summary judgment motion.

Without determining whether mandamus is appropriate in this context, we note that a trial court errs in granting a no-evidence motion for summary judgment if "adequate time for discovery" has not elapsed. *See* TEX. R. CIV. P. 166a(i); *Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 469 (Tex. App.–Houston [14th Dist.] 2005, pet. denied); *Caso-*

18

*Bercht v. Striker Indus.*, 147 S.W.3d 460, 463 (Tex. App.–Corpus Christi 2004, no pet.). With respect to the claims of the non-trial plaintiffs, we agree with the defendants that these plaintiffs have not yet complied with the requirements of *Able Supply* and *Borg-Warner* and that they must be required to so comply within a reasonable period of time. *See Able Supply Co.*, 898 S.W.2d at 773. However, for the same reason that we will not impose strict time limits such as those the legislature has imposed on medical malpractice plaintiffs or asbestos and silica claimants, we cannot say that a reasonable time—or an "adequate time for discovery"—has yet elapsed in this case with respect to the non-trial plaintiffs. Accordingly, the trial court's denial of the defendants' motions for summary judgment was not an abuse of discretion for which no adequate appellate remedy is available. We deny the defendants' request to compel the trial court to grant their summary judgment motions as to the non-trial plaintiffs.

**B.     Garza's Claims**

Insofar as we have determined Garza's *Able Supply* and *Borg-Warner* responses to be adequate, the defendants are not entitled to summary judgment on that particular plaintiff's claims.

With respect to defendant Aventis's motion for summary judgment, however, the record reflects that the trial court has not yet ruled on the motion but, rather, took the matter under advisement as of December 11, 2007. Aventis asks that we compel the trial court to grant its motion, noting that Aventis, unlike the other defendants that moved for summary judgment, was not listed by Kaltofen as having provided any of the named chemicals to the Hayes-Sammons plant during the time in question. We agree that Kaltofen's report is critical to Garza's case as to each defendant because it provides, in combination with the report detailing the estimated dosage of each chemical that Garza was exposed to, the essential defendant-specific causal link between chemicals produced and Garza's injuries. Aventis's absence from Kaltofen's list indicates that Garza has not yet met her pre-trial burden under *Borg-Warner* with respect to that defendant. Moreover,

19

because trial in that cause is scheduled for June 15, 2009, Garza's failure to date to meet that burden jeopardizes her claims against Aventis. *See In re Allied*, 227 S.W.3d at 655 (a trial judge cannot postpone responses to basic discovery until shortly before trial), 658 (allowing discovery to continue to thirty days before trial amounts to a denial of discovery going to the very heart of the case).

Because the trial court has not yet ruled on Aventis's motion for summary judgment, we will not direct a particular judgment. However, a trial court's failure to rule on a matter may be deemed an abuse of discretion subject to mandamus relief if the petitioner shows that the trial court: (1) had a legal duty to rule; (2) was asked to rule; and (3) failed or refused to do so. *In re Dimas*, 88 S.W.3d 349, 351 (Tex. App.–San Antonio 2002, orig. proceeding); *In re Chavez*, 62 S.W.3d 225, 228 (Tex. App.–Amarillo 2001, orig. proceeding); *Barnes v. State*, 832 S.W.2d 424, 426 (Tex. App.–Houston [1st Dist.] 1992, orig. proceeding). A trial court has a reasonable time to perform the ministerial duty of considering and ruling on a matter properly filed and before the court. *In re Chavez*, 62 S.W.3d at 228; *Barnes*, 832 S.W.2d at 426. Whether the judge has acted within a "reasonable" period of time depends on the circumstances of the case. *In re Chavez*, 62 S.W.3d at 228 ("No bright-line demarcates the boundaries of a reasonable time period.").

Here, Aventis filed its motion for summary judgment on March 3, 2005; the trial court heard evidence thereon and took the matter under advisement on December 11, 2007. We believe that the trial court has had ample time to review the merits of the motion as it relates to Garza's claims, especially considering the impending trial date of June 15, 2009. We conclude that the trial court abused its discretion by failing to rule on Aventis's no-evidence motion for summary judgment on Garza's claims, and we direct the trial court to so rule.

## VI. CONCLUSION

We conditionally grant the writ of mandamus requested in appellate cause number 13-08-00206-CV in part, and direct the trial court to grant defendants' fourth motion to

20

compel in part by requiring all plaintiffs in trial court cause number C-4885-99-F to provide adequate answers to the *Able Supply* and *Borg-Warner* interrogatories within a reasonable time period as determined by the trial court. Further, we conditionally grant the writ of mandamus requested in appellate cause number 13-08-00678-CV in part, and direct the trial court to rule on defendant Aventis's motion for summary judgment in trial court cause number C-4885-99-F(10).

The writs will issue only if the trial court fails to comply. The petitions for writ of mandamus filed in appellate cause numbers 13-08-00206-CV and 13-08-00678-CV are denied in all other respects.

_____
DORI CONTRERAS GARZA,
Justice

Opinion delivered and filed
this the 27th day of January, 2009.