

# NUMBER 13-21-00001-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE DERUITER RANCH, LLC

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Memorandum Opinion by Chief Justice Contreras[1]**

In this original proceeding, relator DeRuiter Ranch, LLC (DeRuiter) asserts that the

trial court abused its discretion in preventing DeRuiter from obtaining discovery regarding

whether its property is being properly condemned for "public use" in a statutory

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

condemnation proceeding.[2] *See* TEX. UTIL. CODE ANN. § 181.004. We conditionally grant DeRuiter's petition for writ of mandamus.

## I.  BACKGROUND

Permian Highway Pipeline LLC (Permian), a gas utility, filed a petition for condemnation against DeRuiter in Lavaca County, Texas. According to its petition, Permian is in the process of constructing a gas utility pipeline which will be approximately 425 miles long and will traverse seventeen Texas counties. Permian's original statement and petition for condemnation provided that:

> [T]he [p]ipeline . . . will transport, convey, distribute, or deliver natural gas and its associated substances for public use or service for compensation; for sale to persons engaged in distributing or selling natural gas to the public; for sale or delivery to the public for domestic or other use whether for public hire or not; and for which the right-of-way has been or is hereafter acquired by exercising the right of eminent domain.

Permian asserted that its board of directors "found that it is a public use and is necessary, and required by the public convenience and necessity, and in the public interest" for Permian to acquire land for the pipeline's construction.

In connection with the construction of the pipeline, Permian negotiated with DeRuiter to obtain permanent and temporary easements and rights of way on DeRuiter's property, which comprises approximately three hundred fifty-six acres in Lavaca County. After negotiations failed, Permian instituted the underlying condemnation proceeding. After an administrative hearing resulted in an award to DeRuiter, Permian objected to the

---

[2] This original proceeding arises from trial court cause number 2019-05-24150CR in the 25th District Court of Lavaca County, Texas, and the respondent is the Honorable William D. Old III. *See* TEX. R. APP. P. 52.2.

2

award, thereby converting the case into a judicial proceeding. In the underlying proceedings, DeRuiter filed a plea to the jurisdiction in which it asserted that the pipeline does not serve a public use, there is no necessity for the pipeline, and Permian's board of directors abused its discretion and acted arbitrarily and capriciously in determining that there was a public necessity for the pipeline.

During the litigation, DeRuiter propounded discovery requests to Permian. Permian responded to some of the requests, but the parties were unable to agree on all issues regarding discovery. Ultimately, DeRuiter requested the trial court to rule on Permian's objections to six of DeRuiter's requests for production that relate to the alleged "public use" of the pipeline. DeRuiter argued that the requested information is "clearly relevant to whether [Permian's] proposed taking in this case satisfies Texas law's public use requirement." The six requests for production at issue are as follows:

20. All documents showing the ownership structure of the Subject Pipeline.

21. All contracts, prospective contracts, bids, quotes, letters of intent, and commitments for the transportation of any product(s) through the Subject Pipeline.

22. If you or an Affiliate owns the products to be transported by the Subject Pipeline, produce all documents evidencing what you or the Affiliate will do with the products after the products are transported by the Subject Pipeline and/or to whom they will be sold.

23. All contracts between you and any of your Affiliates related to the transportation, processing[,] and sale of any products to be transported through the Subject Pipeline.

24. All contracts between you or any of your Affiliates and any third party related to the transportation, processing, and sale of any products to be transported through the Subject Pipeline.

3

25. All communications with any customer(s) and/or prospective customer(s) for the transportation of any product(s) through the Subject Pipeline.

Permian objected to each of these requests for production. Its objections to the requests were not identical, but its response to each of the requests included this objection regarding relevance:

> Plaintiff objects to this Request to the extent it seeks information that is not relevant to the subject matter of this lawsuit nor is it likely to lead to the discovery of relevant, admissible evidence and is an impermissible fishing expedition specifically prohibited by the Texas Rules of Civil Procedure.

Permian also objected to some of the discovery requests as overly broad, unduly burdensome, or duplicative of other requests. Permian did not file affidavits or other evidence in support of its objections.

DeRuiter filed a request for the trial court to rule on Permian's objections. As stated previously, DeRuiter alleged that the requested documents were relevant and discoverable, yet Permian had "failed to produce a single responsive document to these specific requests." Permian filed a response in opposition to DeRuiter's request, citing the Texas Utilities Code for the assertion that the legislature has determined that gas utilities serve a public purpose and the "common carrier" pipeline standard[3] applied under other statutory schemes requiring an unaffiliated third-party shipper for a public purpose does not apply to gas utilities. *See* TEX. UTIL. CODE ANN. §§ 121.001(a)(2)(A), 121.051(a), 181.004. Permian further asserted that it had "adequately" produced documentation to

---

[3] *See Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline–Texas, LLC*, 363 S.W.3d 192, 202 (Tex. 2012) (articulating a "common carrier" test to determine the public use of a pipeline under the Texas Natural Resources Code whereby "a reasonable probability must exist that the pipeline will at some point after construction serve the public by transporting gas for one or more customers who will either retain ownership of their gas or sell it to parties other than the carrier").

4

show its compliance with the public use requirement, including the affidavit of John J. Towles with exhibits, Permian's "Application for Permit to Operate a Pipeline in Texas" (Form T-4), its permit from the Railroad Commission of Texas, Permian's board's consent declaring public necessity and use, Permian's New Construction Report (PS-48), and Annual Gas Utility Transmission Reports.[4]

The trial court held a non-evidentiary hearing on DeRuiter's request for a ruling in which the parties' arguments focused exclusively on the relevance of DeRuiter's requests for production.[5] Although Permian had a witness available to testify regarding various issues, including the alleged confidentiality of some of the requested data, it ultimately did not produce that witness at the hearing given the parties' exclusive focus on the relevance of DeRuiter's requests. After the hearing, the trial court issued an order on October 19, 2020, sustaining Permian's objections to these requests for production.

This original proceeding ensued. By one issue, DeRuiter contends that the trial court abused its discretion in preventing DeRuiter from obtaining discovery regarding whether Permian's "for profit pipeline project actually serves a public use" and that DeRuiter lacks an adequate remedy by appeal. This Court requested and received a response to the petition from Permian and received a reply thereto from DeRuiter.

---

[4] These documents do not appear in the record before us.

[5] In this original proceeding, Permian asserts that, despite its objections, it has produced the subject pipeline's "transmission annual report for both 2019 and 2018, which includes affiliate membership and ownership within the [Permian] entity[,]" as well as "both public statements and other information . . . regarding the status of the ownership structure and the makeup of the [joint venture], as well as the identity of key anchor shippers." These documents are not in the record before us. Permian further states that information regarding its transportation contracts is confidential; however, Permian has not provided anything to the trial court or this Court to support this proposition. We do not express an opinion regarding the purported confidentiality of the documents at issue, and we likewise do not express an opinion as to whether the produced discovery is responsive to the discovery requests at issue here.

5

## II. STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that "(1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal." *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion when it acts with disregard for guiding rules or principles or when it acts in an arbitrary or unreasonable manner. *In re Garza*, 544 S.W.3d at 840. We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding); *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. An appellate remedy may be inadequate to address an erroneous discovery ruling when

> (1) an appellate court cannot cure the discovery error, such as when confidential information is erroneously made public, (2) the party's ability to present a viable claim or defense—or reasonable opportunity to develop the merits of the case—is "severely compromised" so that the trial would be a waste of resources, or (3) discovery is disallowed and cannot be made part of the appellate record such that a reviewing court is unable to evaluate the effect of the trial court's error based on the record.

*In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 256 (Tex. 2021) (orig. proceeding) (quoting *Walker*, 827 S.W.2d at 843–44); *see In re Allied Chem. Corp.*, 227 S.W.3d 652,

6

658 (Tex. 2007) (orig. proceeding). "A party's ability to present and develop its case may be severely compromised when the denied discovery goes 'to the very heart' of a party's case and prevents it from 'developing essential elements' of its claim or defense." *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 256 (quoting *Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex. 1995) (orig. proceeding)).

### III.   DISCOVERY

"Trial courts have broad discretion to decide whether to permit or deny discovery." *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 247; *see In re Nat'l Lloyds Ins.*, 532 S.W.3d 794, 802 (Tex. 2017) (orig. proceeding). "Parties are 'entitled to full, fair discovery' and to have their cases decided on the merits." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009) (quoting *Able Supply Co.*, 898 S.W.2d at 773). Thus, we liberally construe the rules regarding discovery to ensure that courts are able to decide disputes based on "what the facts reveal, not by what facts are concealed." *In re K & L Auto Crushers, LLC*, 627 S.W.3d at 248 (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 394 (Tex. 2014)).

Our procedural rules allow the broad discovery of unprivileged information that is "relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a); *see In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 131 (Tex. 2018) (orig. proceeding). It is not a ground for objection "that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or

less probable than it would be without the information. *See* TEX. R. EVID. 401. The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co.*, 279 S.W.3d at 664; *see In re Nat'l Lloyds Ins.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam) (stating that we "broadly" construe relevance in determining the scope of discovery). We evaluate the relevancy of discovery on a case-by-case basis. *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding); *see also In re C & J Energy Servs., Inc.*, No. 13-20-00503-CV, 2021 WL 1748090, at *4 (Tex. App.—Corpus Christi–Edinburg May 4, 2021, orig. proceeding [mand. denied]) (mem. op.); *In re Methodist Primary Care Grp.*, No. 14-17-00299-CV, 2017 WL 3480292, at *2 (Tex. App.—Houston [14th Dist.] Aug. 14, 2017, orig. proceeding) (mem. op.) (per curiam).

## IV. ANALYSIS

DeRuiter contends that the requested discovery is necessary to determine (1) whether Permian's board of directors abused its discretion in determining that the pipeline would serve a public use and (2) whether the pipeline will in fact serve a public use. According to DeRuiter, "[a] property owner's ability to challenge the public use or necessity of a private, for-profit corporation's exercise of the public power of eminent domain depends on adequate discovery of these issues."

In contrast, Permian asserts that the scope of discovery does not extend to irrelevant information and that the discovery at issue, primarily transportation contracts, is irrelevant to the public use of its gas. Permian's argument, in large part, is based on

8

the statutory language regarding gas utilities found in the Texas Utilities Code. Permian asserts that it is a gas utility having the right of eminent domain and the legislature has "determined public use by legislative decree." The Texas Utilities Code provides that "[a] gas or electric corporation has the right and power to enter on, condemn, and appropriate the land, right-of-way, easement, or other property of any person or corporation." TEX. UTIL. CODE ANN. § 181.004. A gas utility is defined, in relevant part, as an entity that "owns, operates, or manages a pipeline . . . that is for transporting or carrying natural gas, *whether for public hire or not*." *Id.* § 121.001(a)(2)(A) (emphasis added). And further, a gas utility "is affected with a public interest." *Id.* § 121.051(a). Here, the parties do not dispute that Permian is a gas utility; however, they disagree regarding whether Permian has established a "public use" for the taking as a matter of law.

The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made . . . ." TEX. CONST. art. I, § 17(a);[6] *see Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 83 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Thus, the "Texas Constitution safeguards private property by declaring that eminent domain can only be exercised for 'public use.'" *Tex. Rice Land Partners, Ltd., v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d 192, 194 (Tex. 2012) (quoting TEX. CONST. art. I, § 17(a)). The constitution, as amended in 2009, expressly states that "'public use' does not include the

---

[6] Our "takings" clause as embodied in article I, § 17 is "comparable" to the Fifth Amendment's Just Compensation Clause in the federal constitution. *Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 771 (Tex. 2021) (quoting *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 56 (Tex. 2006)). Texas "case law on takings under the Texas Constitution is consistent with federal jurisprudence." *Jim Olive Photography*, 624 S.W.3d at 771 (quoting *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012)).

9

taking of property . . . for transfer to a private entity for the primary purpose of economic development or enhancement of tax revenues." TEX. CONST. art. I, § 17(b).[7] The Texas Supreme Court has stated that a use is public "when the public obtains some definite right or use in the undertaking to which the property is devoted," but that public use "does not include a benefit to the public welfare or good under which any business that promotes the community's comfort or prosperity might be benefitted from the taking." *City of Austin v. Whittington*, 384 S.W.3d 766, 779 (Tex. 2012) (citing *Coastal States Gas Prod. Co. v. Pate*, 309 S.W.2d 828, 833 (Tex. 1958) ("[W]e have refused to accept the definition adopted by some authorities which makes the phrase mean nothing more than public welfare or good and under which almost any kind of business which promotes the prosperity or comfort of the community might be aided by the power of eminent domain.")); *see Hous. Auth. of Dall. v. Higginbotham*, 143 S.W.2d 79, 84 (Tex. 1940) ("The question of whether or not in a given case the use is a public one depends upon the character and not the extent of such use.").

"Whether a taking is for a constitutional public use is a question ultimately decided by the courts." *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 182 (Tex.

---

[7] In *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 193–94 (Tex. 2019), the dissent argued that the supreme court should reconsider its case law on public use in light of the 2009 amendment to the Texas Constitution's Takings Clause, which "afforded property owners greater protection against eminent domain . . . ." *Id.* at 193 (Blacklock, J., dissenting). The dissent contended that the court "should eliminate deference to the government in takings cases, undo [our] unjustified burden-shifting rule, and get rid of artificial restrictions on the defenses available to property owners." *Id.* at 195. The majority stated that "[w]e are not unsympathetic to this argument," and agreed that "constitutional text—especially when it has been amended since this Court developed its public-use jurisprudence—should rule over judge-invented interpretive rules." *Id.* at 193. However, the court declined to do so in *Rowlett* "because, simply put, no one has asked us to." *Id.* at 194. In so ruling, the majority further noted that "[a] statutory enactment cannot change the constitution's meaning." *Id.* The court thus left the impact of the 2009 constitutional amendment on public-use jurisprudence to be determined at a future date. *See id.*

2019); *see Tex. Rice Land Partners, Ltd.*, 363 S.W.3d at 198; *Maher v. Lasater*, 354 S.W.2d 923, 925 (Tex. 1962). "Although the courts ultimately decide what a public use is, a legislative declaration on public use is entitled to our deference." *KMS Retail Rowlett, LP*, 593 S.W.3d at 187; *see Whittington*, 384 S.W.3d at 777–78 (clarifying the judicial scope of review applicable to condemnation cases); *Maher*, 354 S.W.2d at 925. "This deference does not abrogate judicial review." *KMS Retail Rowlett, LP*, 593 S.W.3d at 187; *see Tex. Rice Land Partners, Ltd.*, 363 S.W.3d at 198; *Maher*, 354 S.W.2d at 925. Courts determine the "ultimate question" of whether a particular use is a public use and "may nullify a taking when the condemnor's decision was fraudulent, in bad faith, or arbitrary and capricious." *KMS Retail Rowlett, LP*, 593 S.W.3d at 187; *see Tex. Rice Land Partners, Ltd.*, 363 S.W.3d at 198; *Whittington*, 384 S.W.3d at 777; *Maher*, 354 S.W.2d at 925. We decide whether the taking is for a public use, granting due deference to legislative declarations to that effect, and if so, we consider the landowner's affirmative defense that the taking was nonetheless fraudulent, in bad faith, or arbitrary and capricious. *KMS Retail Rowlett, LP*, 593 S.W.3d at 187. "The inquiry into whether the determinations of public use or necessity were fraudulent, in bad faith, or arbitrary and capricious is a question of law for the court," and these issues should only be submitted to a jury if the underlying facts are in dispute. *Whittington*, 384 S.W.3d at 778; *see Maher*, 354 S.W.2d at 925.

In this case, Permian contends that DeRuiter's requests for production pertaining to Permian's ownership structure and the transportation, processing, and sale of products through the pipeline are foreclosed by virtue of the legislative directives regarding gas

11

utilities in the Texas Utilities Code which, according to Permian, render any discovery regarding the public use of its pipeline irrelevant. Permian states that the "Legislature has determined public use by legislative decree." Permian argues, essentially, that the definition of a gas utility, which is one that operates a natural gas pipeline "whether for public hire or not," and the legislative declaration that a gas utility "is affected with a public interest," foreclose any defense to a condemnation proceeding brought by such a utility and preclude any judicial examination of public use. *See* TEX. UTIL. CODE ANN. § 121.001(a)(2)(A) (definition); *id.* § 121.051(a) (public interest).

We disagree. As stated previously, the legislature's declarations regarding public use do not obviate judicial oversight. *See KMS Retail Rowlett, LP*, 593 S.W.3d at 187; *Tex. Rice Land Partners, Ltd.*, 363 S.W.3d at 198; *Maher*, 354 S.W.2d at 925. And in fact, as instructed by the supreme court, the "Legislature may not authorize that which the Constitution prohibits." *Maher*, 354 S.W.2d at 925; *see* TEX. CONST. art. I, § 17(b) (stating that "'public use' does not include the taking of property . . . for transfer to a private entity for the primary purpose of economic development or enhancement of tax revenues"); *see also Maher*, 354 S.W.3d at 925 (stating that "a mere declaration by the Legislature cannot change a private use or private purpose into a public use or public purpose"). Permian cites several of the foregoing cases which establish the proper role of the judiciary in determining "public use," but fails to acknowledge their import. *See KMS Retail Rowlett, LP*, 593 S.W.3d at 187; *Whittington*, 384 S.W.3d at 777–78.[8] Permian cites no cases

---

[8] Permian cites *Davis v. City of Lubbock*, 326 S.W.2d 699, 704 n.11 (Tex. 1959), and quotes it for the proposition that the judiciary's role in determining whether eminent domain is exercised for a public use is "an extremely narrow one" and where the Legislature declares a particular use to be a public use, that

12

concerning the scope of discovery in a condemnation proceeding under the Texas Utilities Code. And Permian has cited no authority establishing that the legislative definition of a gas utility singularly establishes the public use determination for eminent domain purposes. Rather, Permian largely argues that older case law, predating the supreme court's explanation of the judicial role in overseeing "public use" determinations, and predating the constitutional amendment, generally supports its proposition.[9] However, even these older cases concerning "public use," including some specifically concerning gas pipelines, allow the landowner to present affirmative defenses to a condemnation. *See*, *e.g.*, *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 719 (Tex. App.—Corpus Christi–Edinburg 2000, pet. denied) (stating that a determination regarding necessity is "conclusive absent fraud, bad faith, abuse of discretion, or arbitrary or capricious action"); *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565–66 (Tex. App.—San Antonio 1998, pet. denied) (providing that "a court should approve the taking unless the landowner demonstrates fraud, bad faith, abuse of discretion, or arbitrary and capricious action" and examining evidence adduced during trial to determine if the landowner met its burden to show that the condemnor acted arbitrarily and capriciously); *Grimes v. Corpus Christi*

---

determination is "binding upon the courts unless such use is clearly and palpably of a private character." Permian's alleged quotation from a footnote in *Davis* is actually a quotation from two different lower court cases in two different footnotes in *Davis*, and Permian fails to recognize that *Davis* actually states that the determination of public use is a "judicial [question] giving great weight, however, to the legislative determination." *See id.* at 704.

[9] *See*, *e.g.*, *Loesch v. Oasis Pipeline Co.*, 665 S.W.2d 595, 598 (Tex. App.—Austin 1984, writ ref'd n.r.e.) (stating that a gas utility's ownership of a pipeline "is a 'public use' by legislative declaration, irrespective of whether the pipeline is available for public use"). This case was decided based on an earlier statutory scheme, without the benefit of the supreme court's clarification of the standard of review, and without discussion or consideration of any affirmative defenses to condemnation. *See KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 182 (Tex. 2019).

*Transmission Co.,* 829 S.W.2d 335, 339 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied) (op. on reh'g) (stating that "ownership of a pipeline becomes a public use—regardless of whether it is available for public use," but nevertheless examining evidence, including client lists, to determine if the pipeline operated for a public use); *Tenngasco Gas Gathering Co. v. Fischer*, 653 S.W.2d 469, 475 (Tex. App.—Corpus Christi–Edinburg 1983, writ ref'd n.r.e.) (examining the original proposed use and present use of a pipeline, stating that a legislative declaration that a use is public "is to be given great weight by the court in reviewing a complaint that a particular use, sanctioned by the legislature is, in fact, private," and stating that such a "declaration is binding on the court unless it is manifestly wrong or unreasonable, or the purpose for which the declaration is enacted is 'clearly and probably private'"); *Roadrunner Invs., Inc. v. Tex. Utils. Fuel Co.*, 578 S.W.2d 151, 154 (Tex. App.—Fort Worth 1979, writ ref'd n.r.e.) (examining whether the "property condemned was taken for private rather than public use"); *see also TC & C Real Estate Holdings, Inc. v. ETC Katy Pipeline, Ltd.*, No. 10-16-00134-CV, 2017 WL 7048923, at *4 (Tex. App.—Waco Dec. 20, 2017, pet. denied) (mem. op.) (noting that the determination of necessity "is conclusive absent fraud, bad faith, abuse of discretion, or arbitrary or capricious action").

Permian relies heavily on *TC & C Real Estate Holdings, Inc. v. ETC Katy Pipeline, Ltd.*, 2017 WL 7048923, at *1–5, in support of its argument. In *TC & C*, the Waco Court of Appeals considered an appeal filed by a landowner after a jury trial resulted in a damage award for the landowner in a condemnation proceeding. *Id.* at *1. The landowner contended, in part, that the pipeline owner failed to satisfy jurisdictional requirements

14

because it did not show that the pipeline was for an actual public use. *Id.* The Waco court discussed the supreme court's decision in *Texas Rice Land Partners, Ltd., v. Denbury Green Pipeline–Texas, LLC*, 363 S.W.3d 192 (Tex. 2012), but concluded that it was inapplicable. *Id.* at *2–3. In *Denbury*, the supreme court considered a condemnation proceeding under the Texas Natural Resources Code and held that, "for a person intending to build a $CO_2$ pipeline to qualify as a common carrier under [§] 111.002(6), a reasonable probability must exist that the pipeline will at some point after construction serve the public by transporting gas for one or more customers who will either retain ownership of their gas or sell it to parties other than the carrier." *Id.* at *2 (discussing *Denbury*, 363 S.W.3d at 202). The Waco court concluded that the *Denbury* analysis was inapplicable to cases arising under the Texas Utilities Code, but noted, nevertheless, that the pipeline owner "met the standard in *Denbury* by providing evidence of public use by producing evidence that it has unaffiliated customers." *Id.* at *3. The Waco court ultimately reasoned that the "legislative declaration that a use is public and the delegation of power of eminent domain is to be given great weight by the court in reviewing a complaint that a particular use, sanctioned by the legislature is, in fact, private." *Id.* The court concluded that such a "declaration is binding on the court unless it is manifestly wrong or unreasonable, or the purpose for which the declaration is enacted is 'clearly and probably private.'" *Id.* (quoting *Tenngasco Gas Gathering Co.*, 653 S.W.2d at 475; *Mercier*, 28 S.W.3d at 719). According to the court, the "legislature by its enactment has determined the importance to the public of moving natural gas from the producing areas to where it can be used," and thus, "we find that the use at issue in this case qualifies as a 'public

15

use' so as not to offend the Constitution." *Id.* The court went on, though, to consider the landowner's contention that the condemnor failed to meet jurisdictional requirements insofar as the board of directors failed to properly determine that the taking was necessary, which determination was "conclusive absent fraud, bad faith, abuse of discretion, or arbitrary or capricious action." *Id.* at *4. The court examined evidence, including resolutions and testimony, to determine that the landowner had not met its burden to show that the condemnor engaged in fraud, bad faith, abuse of discretion, or arbitrary or capricious action. *Id.*

Whether or not we agree with the entirety of the analysis in *TC & C Real Estate Holdings, Inc.*, and we note that it was decided without the supreme court's clarification of the standard of review in *Rowlett*, it is abundantly clear that the court considered evidence, including evidence of unaffiliated customers, in performing its review of the condemnation issues at hand. *Id.* at *3–4.

Here, DeRuiter, in its "Plea to the Jurisdiction and, in the Alternative, Objections to the Award of Special Commissioners," has expressly pleaded an affirmative defense that the

> pipeline does not serve a public use, there is no public necessity for the pipeline that is the subject of this condemnation case, and [Permian's] governing body has abused its discretion and has acted arbitrarily and capriciously in purporting to determine that a public necessity exists for the project for which it proposes to acquire an easement across a portion of the property.

Whether a condemnor's decision was fraudulent, in bad faith, or arbitrary and capricious is, at least in part, evidentiary in nature and depends on proof regarding the affirmative defense. *See KMS Retail Rowlett, LP*, 593 S.W.3d at 189 (considering summary

16

judgment evidence regarding the affirmative defense of fraud and noting that fraud, bad faith, and arbitrariness and capriciousness are not interchangeable defenses in support of an argument that the public use was actually private); *Whittington*, 384 S.W.3d at 778 (noting that disputed facts regarding an affirmative defense may require submission to a jury). Whether or not Permian has a "public use" for the condemnation is a relevant issue in this lawsuit, and the requested discovery pertaining to ownership of the pipeline and the transportation, processing, and sale of any products through the pipeline is pertinent to DeReuiter's affirmative defenses to the condemnation, that is, whether it is fraudulent, in bad faith, or arbitrary and capricious. Therefore, we conclude that the trial court abused its discretion by sustaining Permian's objections to DeRuiter's discovery requests.

We further conclude that DeRuiter lacks an adequate remedy by appeal to cure this abuse of discretion. DeRuiter has been effectively denied a reasonable opportunity to develop a defense that goes to the heart of its case. *See In re K & L Auto Crushers, LLC*, 627 S.W.3d at 256; *Able Supply Co.*, 898 S.W.2d at 772; *Walker*, 827 S.W.2d at 843–44. Moreover, a reviewing court would be unable to evaluate the effect of the trial court's denial of discovery from Permian. *See In re K & L Auto Crushers, LLC*, 627 S.W.3d at 256; *Able Supply Co.*, 898 S.W.2d at 772; *Walker*, 827 S.W.2d at 843–44.

Based on the foregoing, we sustain DeRuiter's sole issue presented in this original proceeding.

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, Permian's response, the reply, and the applicable law, is of the opinion that DeRuiter has

met its burden to obtain mandamus relief. Accordingly, we conditionally grant the petition for writ of mandamus and direct the trial court to (1) withdraw its order of October 19, 2020, sustaining Permian's objections to DeRuiter's requests for production and (2) allow discovery regarding DeRuiter's defenses to the condemnation action.

The trial court retains discretion to issue a protective or confidentiality order as necessary to protect any information that Permian may establish to be confidential and privileged from disclosure, and to impose any other necessary and appropriate limitations. *See In re K & L Auto Crushers, LLC*, 627 S.W.3d at 258 (regarding the trial court's discretion to handle discovery issues after mandamus); *In re Hous. Pipe Line Co.*, 311 S.W.3d 449, 452 (Tex. 2009) (orig. proceeding) (per curiam) (giving the trial court permission to rule on an issue after vacating a previous order). We are confident the trial court will comply, and our writ will issue only if it does not.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
28th day of September, 2021.